Nancy MORGAN

v.

BUCKS ASSOCIATES, a Pennsylvania
limited partnership,

v.

R. H. MACY & COMPANY
t/a Bamberger's.

Civ. A. No. 75–439.

United States District Court,
E. D. Pennsylvania.

March 10, 1977.

MEMORANDUM AND ORDER

RAYMOND J. BRODERICK, District Judge.

In this action based on diversity of citizenship, the plaintiff, an employee of Bamberger's Department Store, alleged that the defendant, Bucks Associates ("Bucks"), owner of the Oxford Valley Mall, a shopping center in which the Bamberger's store was located, was negligent in failing to exercise reasonable care to protect her from an assault which took place after she left work and was walking to her automobile parked nearby. Defendant Bucks has moved this Court for a new trial or for a judgment n. o. v. After carefully considering the grounds urged by defendant, this Court has determined that it must deny the motion.

This action was tried before a jury which returned a verdict in favor of the plaintiff, Nancy Morgan, against Bucks on July 22, 1976.[1] Plaintiff brought this action against Bucks to recover damages for the assault which occurred on July 20, 1974 on the parking lot of the Oxford Valley Mall, a 140 acre shopping center (N.T. 3–37) owned and operated by the defendant. The five major department stores and approximately 160 smaller retail stores at the mall, which were open until 9:30 or 10:00 p. m. each night, employed approximately 2,000 persons. (N.T. 2–85, 86; 3–37). On the day of the assault, plaintiff was an employee of Bamberger's Department Store located in the Mall. (N.T. 2–85). She drove to work and arrived at 1:15 p. m. She parked in the closest parking space available, which was about 500 feet from the employees' entrance to Bamberger's and approximately three quarters of the way from the employees' entrance to the outside perimeter of the parking lot. (N.T. 2–28, 2–86). Plaintiff left Bamberger's at 9:30 p. m. and as she walked to her car she was assaulted and injured by an unknown assailant. (N.T. 2–12, 14, 87, 95).

William T. Adis, Pechner, Dorfman, Wolffe & Rounick, Philadelphia, Pa., for plaintiff.

Robert St. Leger Goggin, Marshall, Dennehey & Warner, Philadelphia, Pa., for defendant.

Ronald F. Bove, Swartz, Campbell & Detweiler, Philadelphia, Pa., for third-party defendant.

---

1. During the trial the Court granted the motion of the third-party defendant, Bamberger's, for a directed verdict.

Motions for a new trial require the exercise of discretion by the Court whose ". . . duty is essentially to see that there is no miscarriage of justice." 6A *Moore's Federal Practice* ¶ 59.08[5] at 59–160; *Thomas v. E. J. Korvette, Inc.,* 476 F.2d 471 at 475, 3 Cir. The jury's verdict may be vitiated only if manifest injustice will result if it were allowed to stand. The Court may not substitute its own judgment for that of the jury merely because it may have reached a different conclusion. To grant a motion for judgment n. o. v., the Court must find as a matter of law that the plaintiff failed to adduce sufficient facts to justify the verdict, *Neville Chem. Co. v. Union Carbide Corp.,* 422 F.2d 1205, 1210 (3d Cir.), cert. denied, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). Such a motion ". . . may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." 5A *Moore's Federal Practice* ¶ 50.07[2] at 2356. Even though defendant's memorandum does not address all of the contentions raised in its motion, we have, nevertheless, considered all of the grounds raised in its motions. The only assignment of error discussed in defendant's memorandum is that the evidence is insufficient to support the verdict. In summarizing the evidence and ruling on defendant's motion, we will view the evidence and the inferences therefrom in a light most favorable to the plaintiff, the verdict winner. *Thomas v. E. J. Korvette,* 476 F.2d 471 (3d Cir. 1970).

From the opening of the Mall in August of 1973 to the date of the assault, July 20, 1974, there were seventy-seven car thefts and fifteen attempted car thefts from the parking lot of the shopping center. (N.T. 2–15). It was stipulated between the parties that the defendant had knowledge that there were car thefts occurring in the parking lot of the Mall. (N.T. 2–51). Plaintiff testified that during the five months she worked at the Mall she had never seen a security guard inside the Mall or on the parking lot. (N.T. 2–86). In addition, plaintiff's witnesses testified as to the security situation on the parking lot.

Nancy Campbell, a Bamberger's employee who found the plaintiff after the assault, testified that she "maybe" had seen one security guard on the parking lot in the one and one-half month period preceding the assault. (N.T. 2–56).

Harold Buchanan testified that between the Mall's opening in August of 1973 and the assault on July 20, 1974, he picked up his wife and daughter, who both worked at the Mall, to insure that they safely traveled between the parking lot and the stores at which they were employed (N.T. 2–59, 60); that in July of 1974 he came to the Mall to pick them up approximately four or five times a week and remained there for half an hour to an hour (N.T. 2–64, 66–67); that during that time he saw one security guard who made one trip around the buildings in a vehicle and did not "spend too much time in the parking lot." (N.T. 2–67, 68).

Ardella Schnorr, a Bamberger's employee, testified that on the night of the assault she saw no security guards in the parking area. (N.T. 2–72). She also testified that she had seen only one security guard in the parking lot, who patrolled in a jeep, from the day the Mall opened in 1973 until the assault. (N.T. 2–71, 72).

Susan Ferguson, another employee of Bamberger's, testified that from January 1, 1974 until July, 1974, she saw a security guard in the parking lot operating a jeep about once every three weeks. (N.T. 2–77—78).

Stephem Ambrose, a policeman with the Middletown Township Police Department, testified that during the course of his investigation on the night of the attack he did not see any security guards in the parking lot. (N.T. 2–11, 2–30).

The defendant produced testimony in connection with the security which it provided for the parking area at the Mall. Theodore Fox, the vice-president of the Managing Agent of the Mall, testified that in April of 1974 the Mall hired its own security force, which consisted of two to five guards during peak hours who were responsible for security throughout the en-

tire Mall. They patrolled the parking lot in a vehicle once every hour. (N.T. 3–38, 3–46). He testified that prior to the assault on plaintiff he had . been aware that car thefts were occurring on the lot but did not know of any violent crimes. (N.T. 3–40).

James Moffett, who was employed as a security guard during the week of July 20, 1974, testified that a guard was provided with a vehicle for the purpose of driving through the parking lot once each hour and that the Middleton Township police also patrolled the area. (N.T. 3–54). He testified that prior to the attack on the plaintiff he was aware of auto thefts in the parking lot but did not know of any violent crimes. (N.T. 3–55). .

Joseph Jordan, an expert in the field of security, testified that in his opinion the security at the Oxford Valley Mall was reasonable. (N.T. 3–71).

The defendant, Bucks, leased space in the Mall to numerous stores, including Bamberger's, plaintiff's employer. In Pennsylvania, whose law we apply, it is long established landlord-tenant law that where the owner of real estate leases parts thereof to several tenants, but retains possession and control of the common areas which are to be used by business invitees of the various tenants, the obligation of keeping the common areas safe for such business invitees is imposed upon the landlord and not upon the tenants, in the absence of a contrary provision in the leases. *Leary v. Lawrence Sales Corporation,* 442 Pa. 389, 275 A.2d 32 (1971). There was no testimony of any such contrary provision in any lease. Even though shopping centers are a comparatively recent commercial development, with facilities that are substantially different than those known heretofore, these principles of landlord-tenant law are applicable to a shopping center. *Id.* The plaintiff who at the time of the assault was an employee of a store in the shopping center, was a business invitee for the purpose of this rule of law.

The basis of plaintiff's claim that defendant was negligent in failing to exercise reasonable care to protect her is found in Section 344 of the Restatement of Torts, 2d, which provides:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Comment f. to Section 344 further provides:

Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of the third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

Defendant's first contention is that plaintiff did not produce any evidence upon which the jury could have concluded that the defendant did not take reasonable steps to provide adequate security. Pursuant to Comment f. to Section 344 of the Restatement, the defendant's duty is "to take precautions" and "to provide a reasonably sufficient number of servants to afford a reasonable protection." In *Moran v. Valley Forge Drive-In Theatre, Inc.,* 431 Pa. 432,

246 A.2d 875 (1968), plaintiff was injured when a firecracker exploded in the restroom. Plaintiff proved that prior to the incident boisterous and disorderly conduct, including firecracker explosions, had taken place on the theatre premises, and that the theatre failed to warn its patrons. On the night of the accident, three rampmen, who were responsible for maintaining decorum, were on duty. The Pennsylvania Supreme Court held that the plaintiff had established sufficient facts from which the jury could have inferred negligence on the part of the defendant. Adopting the lower court's decision, the Supreme Court held:

> Applying the above law [Section 344 of the Restatement] to the evidence in this case, we must conclude that the prior occurrences of rowdiness by teenagers; the multitudinous firecracker explosions; and the inability of rampmen to maintain proper decorum were sufficient to make out a question of fact for the jury. *It was also a question of fact for the Jury as to whether or not the [Theater] took adequate measures to either warn patrons of possible danger or to prevent acts on the part of third persons which might injure patrons of the theater.* . . . Under Section 344 of the Restatement of Torts, it is not necessary for defendants to be specifically aware of the exact location on their premises where patrons might be injured by the tortious acts of third persons. It is sufficient to establish a jury question of liability if the evidence, as in this case, shows that the defendants had notice, either actual or constructive, of prior acts committed by third persons within their premises which might cause injuries to patrons. (emphasis added). 431 Pa. at 436–37, 246 A.2d at 878–79.

In *Moran,* the defendant also contended that there was nothing it could have done to prevent the injuries to the plaintiff. The Court rejected this argument, stating:

> It is merely necessary, under the Restatement of Torts, Section 344, that reasonable measures be taken to control the con-

duct of third persons . . . . . It then becomes a question of fact for the jury as to whether or not the [Theater] fulfilled [its] responsibility under the law. In this case there was a jury question as to whether adequate measures were taken to control the conduct of third persons . . . . . 431 Pa. at 437–38, 246 A.2d at 879.

█ Plaintiff's witnesses testified that they seldom saw security in the parking lot. On the night in question, while plaintiff was lying on the ground, no one from the security force came to aid her, and the policeman who investigated the assault that evening did not see any security guards. Matters of credibility are for the jury; if the jury believed plaintiff's witnesses there was ample evidence to support their verdict that defendant's security was not reasonable. However, even if the jury believed defendant's witnesses, they had sufficient evidence on which to conclude that sending one guard through the parking lot once an hour in a vehicle was not reasonable.

█ Defendant's second argument is that the plaintiff produced no evidence showing that the defendant knew or had reason to know that an assault might occur, and that its knowledge of the occurrence of numerous car thefts did not impose upon it a duty to protect persons from criminal assaults. In other words, defendant's position appears to be that its knowledge that car thefts were being committed obligated it to protect against cars being stolen from the Mall's parking lot but did not obligate it to protect against patrons being attacked on the parking lot. This distinction is rejected by the Restatement of Torts, 2d, and by *Prosser on Torts.* Both authorities take the position that if, as a proximate cause of defendant's negligence, plaintiff suffers a different kind of harm than that which was threatened by defendant's negligence, defendant will not be relieved from liability. Comment j. to § 281 of the Restatement[2] provides:

> . . . the fact that the interest to which harm results is a different interest,

2. § 281 sets forth the elements of a cause of action for negligence.

or a different kind of interest, from that which was threatened with harm, will not prevent the actor from being liable, so long as the interest in fact harmed is one entitled to legal protection against negligence. *Thus where harm is threatened only to the plaintiff's land and harm results instead to his person, or vice versa, the defendant is not relieved from liability by the unexpected nature of the result, or by the fact that an interest of a different kind has been invaded.* The plaintiff is not subjected to fragmentation in terms of risk or harm to his foot, his hand, his eye, his chattels, or his land. (emphasis added).

*Accord, Prosser on Torts,* § 43, at 259 (4th ed. 1971). *See, Carrillo v. Sameit Westbulk,* 385 F.Supp. 119, 123 (D.P.R.1974), *rev'd in part,* 514 F.2d 1214 (1st Cir. 1975); *Mitchell v. Friedman,* 11 N.J.Super. 344, 78 A.2d 417 (1951). The numerous criminal activities that occurred on the parking lot, i. e., the car thefts, were sufficient for the jury to determine that the defendant knew or had reason to know, "that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor," and that defendant's past experience was "such that he should reasonably anticipate careless or criminal conduct on the part of third persons." Comment f. to § 344 of the Restatement of Torts, 2d.

While we have discussed herein only those contentions which were briefed and argued, we have, however, reviewed the record and considered all of the grounds alleged by the defendant in its motion for a new trial and judgment n. o. v. and we hold that none of them either singly or collectively has sufficient substance to merit any further discussion as a basis for granting a new trial or judgment n. o. v. in this case.

For all of the aforementioned reasons, we deny defendant's motion and enter the attached Order:

### ORDER

AND NOW, to wit, this 10th day of March, 1977, upon consideration of defendant's motion for a new trial or for judgment n. o. v., and the opposition thereto, it is hereby ORDERED and DECREED that said motion is DENIED.