John L. LANE, Jr.

v.

JEFFERSON HEALTH CARE, INC. and Thomas Jefferson University.

Civ. A. No. 76–1576.

United States District Court, E. D. Pennsylvania.

Aug. 31, 1978.

John L. Lane, Jr., pro se.

Brian R. Steiner, Philadelphia, Pa., for plaintiff.

Andrew S. Price, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for Thomas Jefferson University.

Richard M. Shusterman, White & Williams, Philadelphia, Pa., for Jefferson Health Care Inc.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff, John L. Lane, Jr., brought this action against Jefferson Health Care, Inc. ("JHCI") and Thomas Jefferson University following his discharge from the position of Director of Administrative Services for JHCI. Plaintiff contended that he had been discharged because of his race; he is black.[1]

■ At the conclusion of an eleven day trial, the jury returned a verdict against the plaintiff and in favor of the two defendants. The ensuing judgment was filed with the Clerk of the Court on November 7, 1977 and entered in the docket on the following day, November 8, 1977. Plaintiff filed a motion for a new trial on November 18, 1977.[2] On December 7, 1977, plaintiff filed a notice of appeal which was, by stipulation of the parties, dismissed without prejudice on June 22, 1978. Thus, we may now consider plaintiff's motion for a new trial.

■ In his motion for a new trial, plaintiff sets forth the following nine grounds[3] which he contends entitle him to a new trial:

"1. The verdict is contrary to law.

"2. The verdict is contrary to the evidence.

"3. The evidence adduced at the trial thereof was sufficient to sustain the allegations that there was discrimination on the part of the defendants in their termination of the plaintiff's employment.

"4. The verdict of the jury herein was contrary to the weight of the evidence and in violation of the substantial rights of the plaintiff by the obvious lack of proper deliberation and understanding by members of the jury.

"5. The court refused to allow proper cross examination of several witnesses by the counsel for the plaintiff, thereby denying the plaintiff a proper opportunity to impeach the testimony of the following witnesses:

Robert He[i]gler, Robert Russell, Robert P. Gilbert.

These actions prejudiced the substantial rights of the plaintiff and denied him the opportunity for a fair verdict.

1. Plaintiff brought this action pursuant to 42 U.S.C. §§ 1981 and 1983 and jurisdiction was founded upon 28 U.S.C. § 1343. At the conclusion of plaintiff's case the Court granted defendants' motions for a directed verdict as to plaintiff's claims pursuant to 42 U.S.C. § 1983 inasmuch as plaintiff had made an insufficient showing of state action. *See Hodge v. Paoli Memorial Hospital*, 576 F.2d 563 (3d Cir. 1978); *Braden v. University of Pittsburgh*, 552 F.2d 948 (3d Cir. 1977). Plaintiff did not challenge this ruling in his motion for a new trial though he did advance it in his memorandum in support thereof. We have reviewed the record and find that our ruling is supported by the evidence. *See also* note 3, *infra.*

2. Defendants contend that the plaintiff's motion is untimely and thus the Court does not have jurisdiction to consider this motion. However, inasmuch as the motion was filed within 10 days from the date of the entry of the judgment, November 8, 1977, *see* Fed.R.Civ.P. 6(a), it complies with the timeliness requirements of Fed.R.Civ.P. 59(b).

3. There is one additional ground: "Other prejudicial and detrimental matters which the Notes of Testimony may reveal." Fed.R.Civ.P. 59(b) sets forth a mandatory 10 day time limit for advancing grounds for a new trial. A party may not reserve the right to set forth additional grounds in support of its motion for a new trial until after the notes of testimony have been received. *Arkwright Mutual Ins. Co. v. Philadelphia Electric Co.*, 427 F.2d 1273, 1275–76 (3d Cir. 1970); *McConney v. The Great A & P*, No. 75–2077, 455 F.Supp. 1143 (E.D.Pa., filed August 23, 1978). Accordingly, we will not discuss herein any grounds advanced by plaintiff in his memorandum but not set forth in his motion. However, we have reviewed these grounds and find that they too are without merit.

"6. The substantial rights of the plaintiff were prejudiced by counsel of the defendants, by their continuous improper, inflammatory, and prejudiced statements in their summation which remarks were designed to improperly influence the jury. These statements all concerned the mental health and condition of the plaintiff and both expressly and implicitly suggested that he suffered delusions and aberrations and that he was not in touch with reality.

"7. The substantial rights of the plaintiff were prejudiced by the jury's failure to render a verdict responsive to instructions given by the court. Had the jurors followed the law applicable to the evidence introduced in the trial of the above action they would have reached a verdict for the plaintiff.

"8. The court erred in its refusal to allow the testimony of Mary K. Laird and Gary Martin, both of whom would have testified as to matters which were relevant, competent, material and admissible under the Federal Rules of Evidence. The exclusion of such evidence, which would have shown that the defendants knew of and reacted to the desires of the Grays Ferry Community and its leaders, to have a caucasian administrator direct the Jefferson Family Health Group, adversely affected the substantial rights of the plaintiff.

"9. The court erred in receiving inadmissible testimony prompted by defendants' counsel Richard M. Shusterman, over the objection of the plaintiff, concerning the grades of the plaintiff while he attended college in 1949. These questions and answers were neither relevant nor material to the issue before the court and resulted in the rights of the plaintiff being prejudiced in that the jury was allowed to hear detrimental facts about the plaintiff which in no manner reflected on his ability or competence while in the employe of the defendants."

Motions for a new trial require the exercise of discretion by the Court whose " . . . duty is essentially to see that there is no miscarriage of justice." 6A *Moore's Federal Practice* ¶ 59.08[5] at 59–160; *Morgan v. Bucks Assoc.*, 428 F.Supp. 546, 548 (E.D.Pa.1977). The jury's verdict may be vitiated only if manifest injustice will result if it were allowed to stand. The Court may not substitute its own judgment for that of the jury merely because it may have reached a different conclusion. *Spurlin v. General Motors Corp.*, 528 F.2d 612, 620 (5th Cir. 1976).

I. *Sufficiency of the Evidence.*

Grounds No. 1, 2, 3, 4 and 7 in effect challenge the sufficiency of the evidence supporting the jury's verdict. In summarizing the evidence and ruling on plaintiff's motion, we shall view the evidence and the inferences therefrom in a light most favorable to the defendants—the verdict winners. *Gebhardt v. Wilson Freight Forwarding Company*, 348 F.2d 129, 133 (3d Cir. 1965).

On March 12, 1973, plaintiff was hired as Director of Administrative Services for JCHI. [N.T. 2–20 to 22].[4] In this position, he worked directly under Dr. Robert Gilbert, Chief of Medical Services at JHCI.

Initially, Mr. Lane and Dr. Gilbert got along very well and plaintiff was performing his job adequately. However, by October, 1974, both considered terminating

---

4. Plaintiff prepared the following job summary for the position of Director of Administrative Services:

This is highly responsible administrative management work, planning, supervising and coordinating the provision of all administrative services for efficient operation of the Jefferson Family Health Group. Work includes responsibility for coordinating and directing the Financial, Personnel, Information Systems, Records & Forms Control, Transportation, Payroll & Timekeeping, Billing & Accounts Payable, Supplies, Inventory Control, and Dictation Processing.

This work for which he is primarily responsible is performed under the general direction of the Project Director. Assignments are general in nature and work is reviewed through conferences and the evaluation of program effectiveness.
[N.T. 4–89].

plaintiff's employment with JHCI. [N.T. 9–143]. The situation worsened in 1975 when plaintiff's relationship with much of the staff at JHCI began to deteriorate [N.T. 9–18] and many of the jobs for which he was responsible were left undone or in a state of disarray. [N.T. 5–118; 8–58; 9–55; 9–91; 9–146; 9–148]. In June, 1975, Dr. Gilbert informed the plaintiff that if he did not resign he would be fired. Dr. Gilbert testified that he reached the decision to terminate the plaintiff because plaintiff had "done an incompetent job as an administrator" [N.T. 9–164] and that plaintiff's race had not entered into the decision. [N.T. 9–165]. Plaintiff's termination became effective on July 31, 1975. [N.T. 3–30].

■ The plaintiff's cause of action pursuant to 42 U.S.C. § 1981 was submitted to the jury and we find that the evidence was amply sufficient for the jury to answer the following interrogatory in the negative: "Has the plaintiff established by a preponderance of the evidence that he was discriminated against because of his race and that this racial discrimination was a proximate cause of his discharge?"

## II. Cross-Examination of Defendants' Witnesses.

Plaintiff contends that the Court improperly curtailed his cross-examination of defendants' witnesses thereby denying him the opportunity to impeach the testimony of the following witnesses: Ronald Heigler, Robert Russell and Robert Gilbert. While a trial court has the discretionary power to limit the scope of cross-examination, *Smith v. State of Illinois*, 390 U.S. 129, 132, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); *United States v. Dansker*, 537 F.2d 40, 60 (3d Cir. 1976); *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *Goehring v. Diamond Mill Co.*, 461 F.2d 77, 79 (3d Cir. 1972), the plaintiff was given wide latitude in his cross-examination of defendants' witnesses.

■ The plaintiff has not called the Court's attention to any specific instances where the Court denied the plaintiff the opportunity to impeach the testimony of Ronald Heigler, Robert Russell or Robert Gilbert. Our review of the record discloses that the cross-examination of Mr. Russell was not limited in any manner. In one instance the Court did limit the cross-examination of both Dr. Gilbert and Mr. Heigler in connection with questions concerning racial unrest in the Grays Ferry area which had no relevancy to plaintiff's allegations of racial discrimination against the defendants.

## III. Closing Arguments.

■ Plaintiff contends that counsel for defendants resorted to improper, inflammatory and prejudicial statements in their closing arguments by "expressly and implicitly suggest[ing] that [plaintiff] suffered delusions and aberrations and that he was not in touch with reality." Plaintiff does not point out to the Court those portions of the defendants' closing arguments which "expressly and implicitly suggested that [plaintiff] suffered delusions and aberrations and that he was not in touch with reality." Counsel for JHCI did argue that the alleged discrimination was "just in [plaintiff's] mind." [N.T. 10–136]. However, at no time during the closing was any objection made by the plaintiff to such references. In view of the evidence presented to the jury, we find that the closing argument was neither inflammatory nor prejudicial.

## IV. Excluded Testimony of Mary K. Laird and Gary Martin.

■ Plaintiff contends that the Court erred in not permitting Mary K. Laird and Gary Martin to testify. Prior to the testimony of Gary Martin, the defendants requested an offer of proof. Plaintiff stated that Gary Martin was employed with the Pennsylvania Commission on Human Relations. He investigated the "John Lane situation and . . . attended the discharge hearing . . . [and] made notes of the entire transaction. . . . " [N.T. 6–8]. Plaintiff stated that the purpose of this testimony would be to attack the credibility

of Dr. Gilbert. [N.T. 6–11]. The Court pointed out that Dr. Gilbert had not yet testified and that it would be improper to attack his credibility as a witness prior to his testimony. Although the Court ruled only that Gary Martin would not be permitted to testify at that point in the trial [N.T. 6–14], plaintiff made no attempt to introduce his testimony after Dr. Gilbert had testified.

■ Prior to the testimony of Mary K. Laird, the defendants again requested an offer of proof. Plaintiff stated that Mary K. Laird was employed by the Philadelphia Commission on Human Relations, and that she would testify about ongoing incidents where blacks were treated in a discriminatory manner in the Grays Ferry section of Philadelphia. The plaintiff contended that, because of the hostility toward blacks in the Grays Ferry area, certain black employees at JHCI were terminated. The Court ruled that it would listen to Mary K. Laird out of the presence of the jury in order to determine whether her testimony concerning racial discrimination in the Grays Ferry area was in any manner relevant to the defendants' alleged racial discrimination against the plaintiff. It was the Court's position that testimony concerning racial discrimination in the Grays Ferry area would be prejudicial to the defendants in the absence of some evidence connecting it with the defendants' alleged racial discrimination. [N.T. 6–16 to 19].

The Court heard Mary K. Laird's testimony out of the presence of the jury and her testimony revealed that there was no link or connection between discrimination in the Grays Ferry area and the alleged racial discrimination by the defendants. The Court ruled, therefore, that Mary K. Laird would not be permitted to testify before the jury concerning racial problems in the Grays Ferry area. She was, however, permitted to testify concerning conversations which she had with Dr. Gilbert considered by the Court to be relevant to the racial attitudes of the defendants. [N.T. 7–75 to 78]. We see no error in connection with these rulings.[5]

## V. *Mr. Lane's College Grades.*

■ Finally, plaintiff contends that the Court erred in permitting the defendant to cross-examine the plaintiff concerning his grades at college on the ground that such cross-examination was irrelevant and immaterial.[6] A review of the record reveals that the plaintiff did not make such an objection. [N.T. 4–135 to 137]. Moreover, we find that this testimony was within the scope of proper cross-examination, not only on the basis of plaintiff's direct testimony, but for the additional reason that the cross-examination of a party is not limited to his direct testimony. *Rivers v. Union Carbide Corp.*, 426 F.2d 633, 639 (3d Cir. 1970).

Also before the Court are defendants' motions for attorneys' fees pursuant to the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, which provides in pertinent part:

> In any action or proceeding to enforce a provision of [section] 1981 . . . [or] 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.

In *Christiansburg Garment Co. v. E.E. O.C.*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court recently addressed the circumstances under which attorney's fees should be awarded to a prevailing defendant in a Title VII action.[7] The Court stated:

> A district court may in its discretion award attorney's fees to a prevailing de-

---

5. Attached to plaintiff's memorandum in support of his motion are affidavits of Gary Martin and Mary K. Laird in which claims that plaintiff's race was a factor in his discharge are advanced. Such information was not presented at the trial.

6. The grades in fact concerned the plaintiff's participation in a graduate program. [N.T. 4–134].

7. Although the Court in *Christiansburg* was considering 42 U.S.C. § 2000e–5, 42 U.S.C. § 1988 contains substantially identical language.

fendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation . . . .

*Id.* at 700. The Court cautioned that the mere fact that a plaintiff has not prevailed in the action is not an adequate basis for finding that his action was unreasonable or without foundation. The Court reasoned that to award attorney's fees to a defendant solely on the basis that he prevailed

> could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. . . . Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Id.*

Similarly, the Third Circuit in *Hughes v. Repko,* 578 F.2d 483 at 489 (3d Cir. 1978), in affirming a district court's denial of attorney's fees to a prevailing defendant in a civil rights case, stated:

> The district court found that plaintiffs proceeded in good faith on the advice of counsel [and] . . . that the action was not brought to harass, embarrass, or abuse defendants. Given these findings, which are not attacked, we think they negate any possible finding of the type required by the Supreme Court in such cases before a prevailing defendant may recover an attorney's fee.

*See also Milburn v. Girard,* 581 F.Supp. 626 (E.D.Pa.1978).

■ We find that although the defendants obtained a jury verdict, the plaintiff's action was not frivolous, unreasonable, groundless or without foundation. There is nothing in this record to indicate that plaintiff held anything but an honest belief that he had suffered a violation of his civil rights nor to indicate that he acted in bad faith in bringing this suit, attempting to harass, embarrass or abuse the defendants.

Accordingly, the Court will enter an Order denying plaintiff's motion for a new trial and the defendants' motions for attorney's fees.