**J. Conrad MacQUARRIE,**
**Plaintiff, Appellant,**

v.

**HOWARD JOHNSON COMPANY, et al., Defendants, Appellees.**

No. 88–1544.

United States Court of Appeals,
First Circuit.

Heard Dec. 6, 1988.

Decided June 2, 1989.

David C. Jenkins with whom Gordon P. Ramsey and Ramsey and Murray were on brief for plaintiff, appellant.

D. Alice Olsen with whom Peter C. Knight, David E. Maglio and Morrison, Mahoney & Miller were on brief for defendants, appellees.

Before COFFIN, BREYER and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

MacQuarrie appeals the decision of the district court granting Howard Johnson's motion for Judgment Notwithstanding the Verdict, reversing a $400,000 award by the jury to appellant in this negligence case. We find that there was sufficient evidence supporting the jury's verdict and therefore we reverse.

I. *Background*

Appellant had traveled on a Friday evening to Newark, Delaware in order to attend a football game of Colgate University, his alma mater. He had arranged to stay for the weekend in the local Howard Johnson motor lodge, located right off Route I–95, a major highway running from Maine to Florida. After checking in at approximately 6:00 p.m., MacQuarrie drove to the hotel's Building No. 2, in which his room was located. Evidence at trial indicated that the parking lot was illuminated and that the local police occasionally drove through this area.[1] It appears that no other security measures were provided by the hotel in the area of Building No. 2.

MacQuarrie parked his car and was removing his suitcases from the car's trunk when two men approached and robbed him at gunpoint. Appellant followed all instructions, said nothing, and gave the assailants the cash that he was carrying. Nevertheless, one of the perpetrators shot appellant in the back before fleeing. Appellant was hospitalized for fifty days and was forced to undergo two major operations. The bullet had hit his left arm, apparently shattering the humerus bone, and he has been required to undergo physical therapy to this day. MacQuarrie's orthopedic surgeon testified that MacQuarrie will permanently suffer from pain and loss of movement in that arm.

MacQuarrie brought this suit alleging that Howard Johnson was negligent in the security provided. At trial, MacQuarrie presented the following list of sixteen reported crimes that had been committed on the hotel's premises shortly prior to the shooting (which occurred on October 24, 1984):

| | |
|---|---|
| 11/9/80 | Larceny in parking lot |
| 1/28/81 | Larceny in parking lot |
| 2/28/81 | Larceny in parking lot |
| 3/13/81 | Vandalism in guest room |
| 4/15/81 | Cash register shortage |
| 4/18/81 | Cash register shortage |
| 4/30/81 | Robbery attempt in a guest room |
| 6/24/81 | Larceny in parking lot |
| 6/24/81 | Larceny in parking lot |
| 6/24/81 | Larceny in parking lot |
| 6/26/81 | Vandalism to elevator |
| 9/21/81 | Burglary attempt |
| 10/9/81 | Larceny in parking lot |
| 10/28/81 | Theft of vehicle |
| 3/15/82 | Larceny in parking lot |
| 9/23/82 | Robbery of a guest |

Appellant's security expert ("Somerson") testified that fencing was necessary around the parking lot and that video cameras should have been placed in these areas with viewing screens at the front desk of the hotel. Although the expert admitted that these measures would not have ensured that this crime would not have occurred, he concluded that considering all relevant information, Howard Johnson's existing security measures were inadequate, the recommended changes would have greatly de-

1. The record is unclear as to the formality or the specifics of this arrangement between the police and the hotel.

terred all criminal activities in this area, and they would have made the assault against MacQuarrie much less likely. The testimony of this witness was admitted after two voir dire examinations into his qualifications to testify as an expert on these matters.

After the jury found for appellant, Howard Johnson moved for a judgment n.o.v. and, in the alternative, a new trial. *See* Fed.R.Civ.P. 50(b). The trial judge granted the motion for j.n.o.v. He concluded that judgment for appellee was required because the evidence was insufficient to support a finding that this crime was forseeable. The court relied primarily on other cases finding liability, in all of which there had been a much greater history of past criminal conduct, including prior violent criminal acts. Although acknowledging that there was additional evidence due to the testimony of appellant's expert, the trial judge discounted this evidence which he found to be not credible. *MacQuarrie v. Howard Johnson*, No. 84–3375–WD–A (D.Mass. Apr. 29, 1988).

II. *The Motion for Judgment N.O.V.*

"The exercise of the judicial prerogative to terminate a case must be painstaking." *United States v. Articles of Drug Consisting of Following: 5,906 Boxes*, 745 F.2d 105, 113 (1st Cir.1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1358, 84 L.Ed.2d 379 (1985). Thus, the well-established standard within this circuit for granting a motion for judgment *non obstentio verdicto* (n.o.v.) is very rigorous. As with a directed verdict, a judgment n.o.v. "should be granted only when the evidence, and the inferences to be drawn therefrom, viewed in the light most favorable to the nonmovant (appellant), could lead reasonable persons to but one conclusion." *Dopico–Fernández v. Grand Union Supermarket*, 841 F.2d 11, 12 (1st Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 164, 102 L.Ed.2d 135 (1988); *accord Turner v. Johnson & Johnson*, 809 F.2d 90, 100 (1st Cir.1986).

It is the jury's function as finder of fact, and not the role of the judge, to weigh the evidence and determine the credibility of the witnesses presented. Therefore, the district court in considering a motion for judgment n.o.v. must consider all of the evidence properly admitted in the light most favorable to the party opposing the motion. The decision to grant a motion for judgment n.o.v. "must be made without evaluating the credibility of the witnesses or the weight of the evidence and without attempting to resolve conflicting testimony." *Conway v. Electro Switch Corp.*, 825 F.2d 593, 598 (1st Cir.1987).

The court below granted this motion after concluding that reasonable persons, who had considered all of the evidence in the light most favorable to plaintiff, could only conclude that this type of violent act was not forseeable. MacQuarrie relied at trial on two types of evidence in order to establish forseeability. First, he supplied the aforementioned list of prior crimes occurring at the hotel. Also, MacQuarrie presented an expert that testified that in his opinion it was more probable than not that a crime of this type would occur. The expert based this opinion on four factors: 1) the proximity of the hotel to Route I–95, which could provide criminals with easy access and escape, and the general area of the hotel, in which there were numerous gas stations and liquor stores; 2) past criminal activity at the hotel; 3) the heightened activity at the hotel and in the area during the weekend in question because of the football game that was to take place; and 4) the lack of security that existed at the hotel. Although a comprehensive security manual was adopted by the hotel, evidence indicated that the employees were unfamiliar with its guidelines and that the recommended security measures were largely ignored.

The judge below began his analysis by comparing the crimes that had occurred on these premises to those that had occurred in other cases in which forseeability had been found. He relied primarily on *Sharpe v. Peter Pan Bus Lines, Inc.*, 401 Mass. 788, 519 N.E.2d 1341 (1988), *Jardel Co. v. Hughes*, 523 A.2d 518 (Del.1987), and *Nallan v. Helmsley–Spear, Inc.*, 50 N.Y.2d 507, 429 N.Y.S.2d 606, 407 N.E.2d 451

(1980). Although forseeability was found in each of these cases, there were fewer crimes reported at the Howard Johnson hotel than there had been at the business locations in these other cases and, of most significance to the judge below, none of the crimes at the Howard Johnson hotel had been violent. Basically, all of the past incidents had been property crimes.

The only evidence supporting forseeability that was presented in this case, and not present in the aforementioned cases considered by the lower court, was the testimony of MacQuarrie's expert. The judge below, however, discounted this testimony apparently because he considered the expert's opinion, that past larcenies could reasonably foreshadow a violent crime, to be so farfetched that it proved only that "experts can be found to testify to anything." *MacQuarrie v. Howard Johnson*, No. 84–3375–WD–A (D.Mass. Apr. 29, 1988).

The court below erred in ignoring the testimony of MacQuarrie's expert, after it had been duly admitted and properly considered by the jury. There was sufficient evidence as to Mr. Somerson's credentials to establish his expertise. After extensive voir dire on the area of forseeability, he was permitted to testify as to his opinion, and thus, this opinion became part of the evidence for the jury to consider. It is clear from the record that a jury could have reasonably found Mr. Somerson's testimony to be credible. In fact, appellee does not argue that it was error to admit this testimony.

Both parties agree that Delaware's substantive law of negligence is controlling in this diversity case. The seminal case in this area, *Jardel Co. v. Hughes*, 523 A.2d 518 (Del.1987), establishes that a business owner can be liable for injuries caused by the forseeable acts, even crimes, of third parties. *See also DiOssi v. Maroney*, 548 A.2d 1361, 1367 (Del.1988). In *Jardel*, a woman who was an employee of a store within a shopping mall was brutally beaten and raped after she was abducted from the mall's parking lot one evening. The Delaware Supreme Court considered her an invitee of the mall and, like many other juris-

dictions, adopted the reasoning enunciated within Section 344 of the Restatement (Second) of Torts (1965). This section states:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons....

Comment f to Section 344 explains that although the owner of the property is not an insurer of the land, there are certain circumstances in which liability is warranted.

[The possessor] may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

The defendant in *Jardel*, the owners of the shopping mall, argued that the crime in question could not have been foreseen because past crimes at the mall had almost exclusively been property crimes and there had been very few other crimes against a person. The Delaware Supreme Court, however, rejected this "specific crimes" argument. The court recognized that *any* crime can become violent under certain circumstances. "Criminal activity is not easily compartmentalized. So-called 'property crimes,' such as shoplifting, may turn violent if a chase ensues and, as the evidence in this case indicates, family quarrels may become violent with the risk that deadly weapons may be used." *Id.* at 525. Thus, the court concluded that it is necessary to consider all of the past crimes in the area

to determine the forseeability of future injury, as well as property loss. *Id.* "[C]rimes of whatever type and whenever occurring on the premises are part of the circumstantial setting in which security needs are measured." *Id.* at 526. Because there had been past criminal activity in the parking lot of the mall, the court held that a factual issue was raised requiring the jury's determination. A different standard would have very negative implications. For instance, the first victim of any violent crime necessarily would be unable to recover. *See Isaacs v. Huntington Memorial Hospital,* 38 Cal.3d 112, 695 P.2d 653, 658, 211 Cal.Rptr. 356, 361 (1985). Moreover, the "specific crimes" standard equates forseeability with previous occurrences which is unfaithful to the proper definition. *See id.* at 659, 211 Cal.Rptr. at 362.

Under these standards, we think that the court below should not have taken this case from the jury. Mr. Somerson, MacQuarrie's expert, testified that he believed this crime was foreseeable and based his opinion on specific information which mirrored the factors enunciated in the Restatement Section 344: the place of the business, past crimes, and the character of the business which could be interpreted to include existing security measures. *See supra* at 129 –130. Two employees of Howard Johnson testified that there was an almost complete lack of security measures at the hotel; one of these employees testified further that he had on several occasions notified the persons in charge of security at all Howard Johnson establishments as to the security problems in that parking lot. No remedial measures were ever implemented. A jury could reasonably infer that a hotel at which there is obviously deficient security would be much more attractive as a potential target of criminal activities.

Also, although there had been only property crimes in the past, the frequency with which they occurred and the types of crimes that had taken place (such as an attempted burglary of a guest's room while the guests were there sleeping) indicates that it was reasonable to conclude that a violent crime may at some time occur.[2] We agree with the Delaware Supreme Court that even a larceny of goods from a car could easily become violent if the car's owner unexpectedly appears. There was evidence of numerous larcenies in the parking lot, disturbances by drunken and disorderly trespassers, as well as an attempted burglary from a room and a robbery of a guest. Therefore, we conclude that this evidence sufficed to create a question for the jury on the issue of forseeability and thus, we reverse the grant of appellee's motion for judgment n.o.v.

■ Howard Johnson also argues that the judgment n.o.v. may be properly affirmed on a different ground than decided by the court below. They argue, as they did below, that even assuming that Howard Johnson's security measures were not reasonable there was no evidence presented at trial to support finding causation; in other words, that the evidence did not show that greater care or security would have prevented this attack.[3] Although we agree that it is appropriate for us to consider this argument as a possible basis for affirmance at this time, *see United States v. American Railway Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924); *Curley v. Mobil Oil Corp.,* 860 F.2d 1129, 1134 n. 3 (1st Cir.1988), we conclude that this claim is meritless.

MacQuarrie argued that the unreasonable security provided was the proximate cause of his injuries. He presented evidence that additional security measures, such as fencing to better control the prop-

---

2. Both parties recognize that at least one federal district court, applying the law of Pennsylvania, has found forseeability of a violent attack although only property crimes had occurred previously. *See Morgan v. Bucks Associates,* 428 F.Supp. 546 (E.D.Pa.1977). Admittedly, however, many more larcenies had in that case taken place. *Id.* at 547–48.

3. The court below did not specifically address this argument because its conclusion that the crime was not foreseeable necessarily led to the finding that there was no causation. Although the court seemed to imply that it would not have granted judgment n.o.v. on this ground, we will assume that the court below made no determination.

erty's boundaries plus one or two video cameras and monitors, would have greatly deterred criminal activities in this area, as well as the specific attack against him. His expert also testified as to the importance of the implementation of the security measures listed within Howard Johnson's security manual. Although Howard Johnson disputes the effectiveness of the measures recommended by MacQuarrie's expert, his testimony and opinions were properly before the jury and expert testimony may provide a sufficient basis for a finding of causation.

Contrary to Howard Johnson's argument, evidence need not prove that with additional security measures the crime definitely would not have taken place. The standard is necessarily less severe. Evidence must show only that, with reasonable precautions, the injury, more likely than not, would not have occurred.

Also, the criminal act of the third party in this case is not intervening and superseding, thus breaking the chain of causation between the lack of security provided and MacQuarrie's injuries. The Delaware Supreme Court has recently reaffirmed that to be superseding causes of liability, criminal acts must not be forseeable. *Knerr v. Gilpin, Van Trump & Montgomery, Inc.*, 1988 WL 40009, 7 (Del. April 8, 1988); *McKeon v. Goldstein*, 3 Storey 24, 53 Del. 24, 164 A.2d 260 (1960). We have already considered and dismissed this forseeability argument.

The determination of proximate cause is a question for the trier of fact. *Lynch v. Athey Products Corp.*, 505 A.2d 42 (Del. Super.1985). The jury can infer proximate cause from the link between Howard Johnson's alleged security deficiencies and the criminal assault that took place. Thus, although this issue is a close one, it is an issue appropriately for the jury. Considering all of the evidence in the light most favorable to MacQuarrie, there was sufficient evidence from which the jury could have found that Howard Johnson was negligent in the minimal security it provided and that this negligence was the proximate cause of MacQuarrie's injuries.

### III. *The Motion for a New Trial*

■ The court below held that if its grant of judgment n.o.v. was found to be error, then appellee's motion for new trial should be denied.[4] There is a great difference between the decision to grant a judgment n.o.v. and to grant a new trial. Trial courts have wide discretion when considering a motion for a new trial. *See Wells Real Estate v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 811 (1st Cir.1988). As this circuit has repeatedly stated, we will reverse a judge's decision not to grant a motion for a new trial "only if the verdict is so seriously mistaken, so clearly against the law or the evidence, as to constitute a miscarriage of justice." *Levesque v. Anchor Motor Freight, Inc.*, 832 F.2d 702, 703 (1st Cir.1987); *see Mayo v. Schooner Capital Corp.*, 825 F.2d 566, 570 (1st Cir.1987). This strict standard of review is especially appropriate if the motion for new trial is based on a claim that the verdict is against the weight of the evidence. *Wells*, 850 F.2d at 811. Thus, our review is limited solely to determining if the court abused its discretion in making this decision. *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1334 (1st Cir.1988); *Mayo*, 825 F.2d at 568.

Appellee argues on appeal that if the judgment n.o.v. is reversed, then the appropriate relief would be to grant their motion for a new trial. They base this claim on their argument that even if judgment n.o.v. was incorrect, there was insufficient evidence of past crimes to support a finding of forseeability and thus, the verdict was contrary to the clear weight of the evidence.[5]

4. More specifically, the judge below held that the motion for new trial should be granted only under the very limited circumstances in which this court would reverse the judgment n.o.v. solely because the "plaintiff should have been allowed to recover for the robbery itself...." *MacQuarrie v. Howard Johnson*, No. 84–3375–

WD–A (D.Mass. Apr. 29, 1988). The trial court held that the motion should otherwise be denied.

5. Due to the similarity of claims, it is common to argue insufficiency of the evidence in one's alternative motion for a new trial. *See C.*

Moreover, they also claim that the expert testimony presented by MacQuarrie "was based on speculation and conjecture, not on facts in evidence," appellee's brief at 46, and thus a new trial would be warranted because the jury's verdict may have been based on improper evidence. *See Turner v. Johnson & Johnson,* 809 F.2d 90, 95 (1st Cir.1986).

■ We disagree. The trial judge, upon considering a motion for new trial, may consider the credibility of the witnesses who had testified and, of course, will consider the weight of the evidence. *Mayo,* 825 F.2d at 569. In this case, Howard Johnson must overcome both the presumption in favor of the jury's favored role as finder of fact and that of the lower court's greater ability to understand the scope of the evidence presented before it and to judge the credibility of those witnesses having testified. Given this deferential standard of review and the scope of the evidence as described above, we conclude that the district court's decision to deny appellee's motion for a new trial was amply supported and was not an abuse of discretion.

To conclude, based upon our reading of the record and the relevant standards of review, we find no grounds for a judgment n.o.v. or for a new trial and therefore the jury's verdict shall be reinstated.[6]

*The judgment of the district court is reversed and the case is remanded for action consistent with this opinion.*

---

Wright & A. Miller, *Federal Practice and Procedure* § 2539 at 608 (1971).

**6.** We commend the prudence of the district court for having allowed this case to go to the jury, thereby permitting us now to reinstate its verdict rather than necessitating a new trial after all of these resources have been expended.