418 A.2d 480

**William H. MURPHY and Cheryl Murphy**

v.

**PENN FRUIT COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued June 18, 1979.

Filed Jan. 18, 1980.

428

430

Kean K. McDonald, Philadelphia, for appellant.

Stephen M. Feldman, Philadelphia, for appellees.

Before CERCONE, President Judge, and HESTER and CATANIA,* JJ.

HESTER, Judge:

In this personal injury action, William and Cheryl Murphy, husband and wife, brought suit against the Penn Fruit Company for injuries sustained by Mrs. Murphy as a result of a stabbing incident in Penn Fruit's parking lot in 1973. Jury verdicts were returned for both plaintiffs following a five day trial. Penn Fruit's motion for a new trial was denied and this appeal followed. We affirm.

At approximately 7:30 p. m. on February 14, 1973, Mrs. Murphy had just completed her weekly grocery shopping at the Penn Fruit store located at Frankford Avenue and Pratt Street, Philadelphia. As she walked to her car parked in the adjacent lot, she was accosted by two young men who grabbed her purse, stabbed her twice in the chest, and then fled into the night. Two passersby, Charles Parrish and Cynthia McShane, assisted in transporting Mrs. Murphy to Frankford Hospital. Upon admittance, she sustained a cardiac arrest and only the immediate surgical relief efforts of attending physicians and nurses, led by Dr. Edward W. Micek, saved her life. To complicate matters, Mrs. Murphy was in an advanced stage of pregnancy. Following the surgery, she went into labor and gave birth to a healthy baby girl the next morning in the hospitals intensive care unit. Suit was instituted against Penn Fruit two months thereafter.

Although her physical injuries had largely resolved themselves by the time of trial, appellees' testimony suggested that psychiatric damage to Mrs. Murphy is "of a permanent nature." Because of the knife wounds to her breast, heart, and lung, Mrs. Murphy is in constant fear of cancer, heart attack, and an early death, despite assurances of her doctors

* President Judge FRANCIS J. CATANIA of the Court of Common Pleas of Delaware County, Pennsylvania, is sitting by designation.

to the contrary. Her condition was diagnosed as anxiety neurosis with strong depressive features. We will describe Mrs. Murphy's physical and psychiatric damages in more detail, infra. Appellees' testimony also suggested that light-. ing in the parking lot and security personnel were inadequate.

■ Appellant first contends the court improperly inferred in its charge that Penn Fruit was a guarantor of Mrs. Murphy's safety from assaults by third persons. Appellant's liability to the Murphy's is bottomed on § 344 of the Restatement Second of Torts:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

The Supreme Court has observed that an occupant of land for business purposes is not, of course, the insurer of the safety of his patrons. "It is merely necessary under [§ 344] that reasonable measures be taken to control the conduct of third persons, or to give adequate warning to enable patrons to avoid possible harm." *Moran v. Valley Forge Drive–In Theatre, Inc.*, 431 Pa. 432, 437, 246 A.2d 375, 879 (1968). Thus, § 344 liability is only applicable where the occupant is negligent, i. e. fails in one of two duties—either to take reasonable care to discover dangerous conduct of third persons is occurring or likely to occur, or to take reasonable care to provide appropriate precautions. *Carswell v. SEPTA*, 259 Pa.Super. 167, 393 A.2d 770 (1978).

■ Our review of the instructions instantly persuades us the court properly informed the jury that Penn Fruit was not a guarantor but would be liable only for its negligence.

The court charged: the jury must decide whether Penn Fruit was negligent, R.R. 435a, 437a; the mere happening of the incident does not prove appellant was negligent; appellees had to prove negligence, R.R. 436a, 438a; the Murphy's must prove Penn Fruit did not exercise the care required towards business invitees, R.R. 440a; those duties were defined, R.R. 447a, 448a; it was again stressed that the jury must decide whether Penn Fruit failed in one of those duties, R.R. 448a. As examples, the court suggested that failure to provide adequate lighting in the parking lot, see, *Kenny v. SEPTA*, 581 F.2d 351 (3 Cir., 1978), and failure to provide security personnel, § 344, comment f, may be factors in determining whether Penn Fruit was negligent. Reading the charge as a whole, *McCay v. Philadelphia Electric Company*, 447 Pa. 490, 291 A.2d 759 (1972); *Brennan v. St. Luke's Hospital*, 446 Pa. 339, 285 A.2d 471 (1971), we are satisfied the court properly charged on the issue of negligence.

Appellant next alleges as error the court's instructing the jury that Penn Fruit, to be adjudicated liable, need not have been aware of the exact type of criminal act or acts that might take place on its premises, R.R. 458a. Evidence at trial bearing on prior criminal activity in and around the Penn Fruit store established that there were instances of disturbances, car thefts, muggings, purse snatches, drug use, and panhandling. A state store one block north of Penn Fruit was a "sore spot" in the mind of one police witness because of underage drinking. This officer had been called to the Penn Fruit "a few times" for a shoplifting incident and "disturbances amongst people." R.R. 56a. The co-manager of the Penn Fruit whose deposition was read at trial, stated there were instances of shoplifting and purse snatches within the store prior to the assault of Mrs. Murphy, but could not recall any criminal activity in the area of the parking lot. Additionally, it was shown that, for security purposes, no Penn Fruit cashier was permitted to accumulate more than $200 in his or her cash register at any time. Finally, the manager of the store in 1973 testified he had no knowledge of any criminal activity outside the store at the

time in question, although he admitted his employment rarely allowed him to venture beyond the store exit.

■■■ Appellant now contends that since there was no evidence of any ·violent crimes on the store's premises prior to February 14, 1973, that it should not have been charged with notice of possible violent crimes in the parking lot. Stated another way, appellant argues that it had no duty to warn or protect customers from possible violent crimes in the parking lot since the evidence suggested only non–violent crimes (i. e. shoplifting, purse snatches) had occurred within the store itself. Appellant's position is incorrect in two respects. First, the exact locale of prior crimes is immaterial insofar as appellant's § 344 duties are concerned. "Under § 344 . . . it is not necessary for [Penn Fruit] to be specifically aware of the exact location on their premises where patrons might be injured by the tortious acts of third persons. It is sufficient to establish a jury question of liability of the evidence . . . shows that [Penn Fruit] had notice, either actual or constructive, of prior acts committed by third persons within their premises which might cause injuries to patrons." *Moran*, supra, 431 Pa. at 437, 246 A.2d at 878–9. Thus, if the jury should find the occurrence of crimes anywhere on the store's property which might pose a danger to others, it could impose a duty upon appellant to take appropriate precautions throughout all of the premises. Second, an examination of past criminal acts in the immediate vicinity of Penn Fruit leads us to conclude the jury could infer that the occurrence of the instant crime was reasonably foreseeable. There were muggings and purse snatches behind the parking lot and purse snatches inside the store (occurring as often as twice a day) which led the store to place a $200.00 ceiling on the amount of cash to be kept in the cashiers' drawers. The jury could reasonably conclude that if enough purse snatches occurred in and around the store, it was inevitable that someone would be hurt and that appellant was charged with taking steps to prevent such or post a warning. Thus, the occupant may "know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general

which is likely to endanger the safety of a visitor. § 344, comment f; see, *Morgan v. Bucks Association,* 428 F.Supp. 546 (E.D.Pa.1977). The court did not err in the charge.

█ Appellant lastly contends the verdict as to Mrs. Murphy, $450,000, was excessive. In *Skoda v. West Penn Power Company,* 411 Pa. 323, 338, 191 A.2d 822, 830 (1963), the Supreme Court stated:

"Appellate courts are properly reluctant to interfere with jury verdicts in personal injury cases, which verdicts are supported by the opinion and approval of the trial judge and the court en banc. *Roadman v. Bellone,* 379 Pa. 483, 108 A.2d 754 (1954). The granting or refusal of a new trial because of excessiveness is peculiarly within the discretion of the court below and we will not interfere, absent a clear abuse of discretion. *Hall v. George,* 403 Pa. 563, 170 A.2d 367 (1961). We will not hold that a verdict is excessive unless it is ' "so grossly excessive as to shock our sense of justice." ' *Kane v. Scranton Transit Co.,* 372 Pa. 496, 94 A.2d 560 (1953), and cases cited thereon."

This Court has outlined some of the factors relevant in determining whether a verdict is excessive: (1) the severity of the injury, (2) whether plaintiff's injury is manifested by objective physical evidence instead of merely the subjective testimony of the plaintiff, (3) whether the injury will affect the plaintiff permanently, (4) whether the plaintiff can continue with her employment, (5) the size of plaintiff's out-of-pocket expenses, and (6) the amount plaintiff demanded in the original complaint. *Kravinsky v. Glover,* 263 Pa.Super. 8, 396 A.2d 1349 (1979); *Robert v. Chodoff,* 259 Pa.Super. 332, 393 A.2d 853 (1978); *Kemp v. Philadelphia Transportation Company,* 239 Pa.Super. 379, 361 A.2d 362 (1976). Applying these standards to the instant case, we find the following:

(1) Appellant concedes that the physical injuries to Mrs. Murphy were severe. When she was admitted to the hospital she was "practically dead." The stab wounds in her left side caused damages to her breast, lung, pericardium (the sac enveloping the heart) and heart. The sutures in the right ventricle of the heart are permanent; the surgeon

testified the scar tissue will never be as strong as the original and may result in future heart problems for Mrs. Murphy. Following delivery of the baby and discharge from the hospital, Mrs. Murphy developed pain in her left breast. The stab wounds had severed milk ducts therein, causing milk to form in painful lumps. Dr. Micek was required to make periodic incisions to drain the milk which had formed the lumps. The scars from the various wounds and surgery have remained tender and sore.

(2) Mrs. Murphy's present injuries cannot, in large part, manifest themselves by objective physical evidence. Medical testimony established her wounds have now healed and her complaints of headaches, dizziness, palpitations, presumed heart attacks, fear of cancer and brain damage cannot be attributed to any organic defect or physical abnormality. See, e. g., *Figlarowicz v. Somerset Electrical Company*, 360 Pa. 586, 62 A.2d 837 (1949) (plaintiff's complaints, except for minor contusions and spasms, were subjective only); *Libengood v. Pa. R. Co.*, 358 Pa. 7, 55 A.2d 756 (1947) (plaintiff's complaints of headaches, "shrill" pains in her back and neck making her "sick all over", and loss of energy, all subjective); *Hudson v. Grace*, 348 Pa. 175, 34 A.2d 498 (1943) (plaintiff's complaints of headaches and dizziness, held subjective where injuries had healed, even though scars remained).

(3) Although her wounds have healed, the sutures to the heart are permanent, as is a small opening in the pericardium. These permanent defects could, according to Dr. Micek, "have an overall effect in a number of years" R.R. 222a. Further, other expert testimony established her psychiatric changes are of a permanent nature.

(4) Mrs. Murphy has not worked since 1969 and her first pregnancy.

(5) Plaintiff's out–of–pocket expenses totalled $5,758.15.

(6) Appellees' demand in the complaint was for "an amount in excess of $10,000.00". Pa.R.C.P. 1044(b).

In addition, the court instructed the jury it could assess damages for pain and suffering, mental anguish, discomfort,

inconvenience, humiliation, distress, loss of pleasure, past and future. For a three month period following the incident, Mrs. Murphy experienced chest pains, slept fitfully, and could not care for her four children. She still experiences a tightness and burning in her chest and is frequently fearful of heart attacks. She testified to an inability to read due to a strange sensation in her head. Her relationship with her children and husband have been severely altered. She has contemplated suicide or committing herself to a mental hospital. She has taken tranquilizers for five years and feels unable to cope without them.

In view of the foregoing, we are unable to say the $450,000.00 verdict shocks our sense of justice. It is clear that in appropriate cases the plaintiff can recover substantial damages for a psychic injury where she has only a minor physical injury, *Potere v. Philadelphia*, 380 Pa. 581, 112 A.2d 100 (1955), or where there is no physical injury. *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970). Mere disparity between the amount of out–of–pocket expenses and the verdict will not by itself provide sufficient basis to upset the award. *Simmons v. Mullen*, 231 Pa.Super. 199, 331 A.2d 892 (1974).

Judgment affirmed.