## Hamm v. SEPTA

*Edward Blumstein,* for plaintiffs.
*Stanley Sinowitz* and *Eugene J. McGurk,* for defendants.

KALISH, *J.,* February 5, 1982 —

## I. FACTS

This case is before the court on the city's motion for judgment on the pleadings.

Plaintiffs, Amaleda Hamm and John Hamm, allege in their complaint that on March 25, 1978, at about 3:00 pm, plaintiff, Amaleda Hamm, arrived at the Juniper Street exit in the concourse of the Philadelphia Subway system. Mrs. Hamm ascended the exit steps from the subway concourse, leading to the street, when she was allegedly assaulted and raped, suffering physical and psychic injuries.

Plaintiffs allege that at all times relevant to their complaint, SEPTA and/or the City of Philadelphia jointly and severally owned, operated, possessed, used and maintained the subway system of Philadelphia, and the concourse on and around the Juniper Street exit. Plaintiffs further allege that defendants knew, or should have known, that

crimes of violence occurred in Philadelphia and in the vicinity of the alleged crime, and that defendants further knew, or should have known, that crimes were likely in an area such as the steps where there was little light and no security guard.

Plaintiffs seek compensatory and punitive damages, alleging that defendants were negligent in their acts or omissions by failing to provide a security guard or security system, increase or repair the existing lighting in the concourse and exit, warn SEPTA's riders of the danger of crimes of violence, and properly police and protect the area. Defendant, City of Philadelphia, claims that any duty of the city to provide security is a public duty which cannot be claimed by an individual unless a special relationship exists between the individual and the City; that no such relationship exists. Plaintiffs concede that such a special relationship is necessary, but asserts that Mrs. Hamm's status as an invitee of the city creates the requisite special relationship. Alternatively, plaintiff claims that Mrs. Hamm's status as an invitee imposes on the city the same duty owned by any property owner to an invitee.

## II. DISCUSSION

In order to constitute a cause of action in trespass for negligence, there must exist a duty owed to this plaintiff by defendant. Whether a duty was owed to this plaintiff is a question of law to be decided on a motion for judgment on the pleadings. If no duty existed, then the motion should be sustained.

It does not matter how the duty arises: Whether by common law, statute or contract. The important consideration is the existence of such duty. In this connection, it must be borne in mind that the Su-

preme Court's abrogation of municipal immunity[1] did not create any new liability or duty. It simply removed the defense of municipal immunity from tort actions regardless of whether the activity involved was governmental or proprietary. The Ayala decision intended to make the governmental defendant subject to tortious liability to the same degree as the private defendant.

"'Where governmental immunity has had the effect of encouraging laxness and a disregard of potential harm, exposure of the government to liability for its torts will have the effect of increasing governmental care and concern for the welfare of those who might be injured Ayala, supra at 599.'"

Immunity was reinstated by the Political Subdivision Torts Claim Act, "Act" except in certain categories: Act of November 20, 1978, §101 et. seq., 42 Pa.C.S.A. §8541 et. seq. (formerly 53 P.S. §5311.101 et. seq.)[2] While the legislature intended to apply the act to claims that arose before the act's promulgation, such retroactive application has been declared unconstitutional: Gibson v. Com., 490 Pa. 156, 415 A. 2d 80 (1980). Since the present alleged cause of action arose prior to the act's passage, there is no municipal immunity in the present case.

---

1. Ayala v. Philadelphia Board of Public Education, 453 Pa. 584, 305 A. 2d 877 (1973).

2. These categories are as follows: (1) municipal operation of motor vehicles; (2) care of other personal property in the municipality's control; (3) control of real property in the possession of the municipality; (4) dangerous condition of traffic lights or street lights under the control of the municipality; (5) dangerous conditions in the municipality's utility systems; (6) dangerous conditions of streets; (7) dangerous conditions of sidewalks; and (8) custody of animals in the possession of the municipality: 53 P.S. §5311.202.

The Pennsylvania Superior Court recently dealt with the issue of a city's duty to provide police protection in Chapman v. City of Philadelphia, 290 Pa. Superior Ct. 281, 434 A. 2d 753 (1981). This involved a complaint brought against the City of Philadelphia by an administratrix for the death of her decedent, resulting from injuries decedent allegedly sustained during an attack and robbery on a railroad platform. Id. at 281. In sustaining the lower court's order which granted defendant's preliminary objections and dismissed plaintiff's complaint against the City, the court held as follows p. 283:

"The duty of the City of Philadelphia to provide police protection is a public one which may not be claimed by an individual unless a special relationship exists between the city and the individual . . . A special relationship is generally found to exist only in cases in which an individual is exposed to a special danger and the authorities have undertaken the responsibility to provide adequate protection for him." Citing Berlin v. Drexel University, 10 D. & C. 3d 319 (1979) (Takiff, J.); Anno., 46 A.L.R. 3d 1084.

The court expressly rejected the argument that the requisite special relationship exists between the City and any individual injured in a particularly dangerous area which the City knows to be dangerous: Chapman v. City of Philadelphia, supra at 284.

But where, as alleged, the City undertakes to render services to another such as joint or several operation of the subway system and ownership of the stairway and the concourse system on and around the Juniper Street exit, then the special relationship between the City and the victim is provided.

A possessor of land owes a duty to a licensee to warn him of a dangerous condition if the possessor has knowledge of the condition and realizes that the condition involves an unreasonable risk of harm to the licensee, and that the licensee is not likely to discover the existence of the dangerous condition: Phillips v. Winters' Cleaners and Tailors, Inc., 344 F.Supp. 1040, 1044 (E.D. Pa. 1972), aff'd mem., 485 F. 2d 681 (3d Cir. 1973), citing Davies v. McDowell National Bank, 407 Pa. 209, 180 A. 2d 21 (1962). An additional duty is owed by the possessor to a business invitee to inspect the premises, and disclose those dangers that a reasonable inspection would reveal. In the present case, plaintiff alleges, as an alternative, that the City knew the steps were in a dangerous area.

Pennsylvania courts have held that the duty of an owner of property to a business invitee applies to the intentional dangerous conduct of third parties: Moran v. Valley Forge Drive-In Theatre, Inc., 431 Pa. 432, 435-37, 246 A. 2d 875, 878-79 (1968); Murphy v. Penn Fruit Co., 274 Pa. Superior Ct. 427, 431-32, 418 A. 2d 480, 482-83 (1980); Carswell v. SEPTA, 259 Pa. Superior Ct. 167, 171-72, 393 A. 2d 770, 772 (1978). In Murphy, plaintiff had just completed her grocery shopping in defendant, Penn Fruit's store when she was robbed and stabbed in Penn Fruit's adjacent parking lot: Murphy v. Penn Fruit Co., supra at 430, 418 A. 2d at 482. The court held that in this situation, the property owner may be held liable for the invitee's injuries if the owner fails to exercise reasonable care to "(a) discover that such acts are being done or likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise protect them against it." Id. at 431, 418 A. 2d at 482, quoting Restatement, 2d, Torts, §344. Further, the Murphy court

upheld the trial court's instructions to the jury that to be held liable, the defendant need not have been aware of the exact types of criminal action that might have taken place on the premises or the exact locale of prior crimes: Murphy v. Penn Fruit, supra at 432, 418 A. 2d at 483-84.

In Stevens v. City of Pittsburgh, 129 Pa. Superior Ct. 5, 194 Atl. 563 (1937), aff'd 329 Pa. 496, 198 A. 655 (1938), plaintiff's son was accidentally shot and killed in a park which was owned, maintained and controlled by the City of Pittsburgh: Id. at 7-8, 194 A. 2d at 564. The City had constructive notice of unauthorized shootings in the park: Id. at 8-10, 194 A. at 564-65. Since municipal immunity existed at the time of this case, the court was faced in Stevens with the issue of whether a municipality exercised a proprietary or governmental function in acquiring and maintaining parks and playgrounds: Id. at 12, 194 A. at 565.

Reversing the trial court's judgment N.O.V. for the City, the Superior Court held that while a municipality is generally not liable for inadequate police protection, the City, in its capacity as owner of the park, need provide the same measure of care as that which a private owner is required to provide. Id. at 12, 18-19, 194 Atl. at 565, 568. The court held that the fact that the only way to abate the nuisance might be through the use of police officers or other employees does not make the City's breach of duty a failure to exercise a governmental function: Id. at 19, 194 Atl. at 569. Accord, Honaman v. Philadelphia, 322 Pa. 535, 185 Atl. 750 (1936), (applying similar reasoning where plaintiff was injured on the sidewalk by a baseball coming from a baseball diamond located on city-owned Fairmount Park.) In so holding, the Stevens court distinguished the case before it from these situations in

which citizens were injured along the public highways: Stevens v. Pittsburgh, supra at 17-19, 194 Atl. at 567-68. It was necessary for the court to make this distinction because municipal immunity for government functions existed at the time Stevens was decided. See Id. at 16, 194 Atl. at 567. However, the Ayala, supra, decision intended to make the governmental defendant subject to tortious liability to the same degree as the private defendant.

Additionally, Pennsylvania has held municipalities liable in accident cases for negligence in failing to keep public stairways in a reasonable safe condition. See Chichester v. Pittsburgh, 354 Pa. 417, 47 A. 2d 130 (1946), defendant City held liable for negligently failing to properly maintain wooden stairway running from a streetcar stop); Stewart v. Pittsburgh, 157 Pa. Superior Ct. 347, 43 A. 2d 393 (1945), defendant City held liable for negligence in failing to properly maintain wooden steps on a hill running between two streets. This holding is in line with those cases that have held municipalities liable for injuries sustained from auto accidents resulting from the municipalities' negligence in failing to use ordinary care in maintaining cartways. See e.g., Green v. Freeport Borough, 218 Pa. Superior Ct. 334, 280 A. 2d 412 (1971). Municipalities have been held to be only secondarily liable for injuries sustained by pedestrians on sidewalks negligently maintained, since the primary duty to maintain the sidewalk rests on the abutting property owner: Ignatowicz v. Pittsburgh, 375 Pa. 352, 355-56, 100 A. 2d 608, 609-10 (1953).

Recently, the Philadelphia Common Pleas Court has denied the City of Philadelphia's demurrer and summary judgment motion in two recent cases factually similar, although not identical, to the case

now before this court. See Fedulla v. SEPTA, 3 Phila. 227 (1979) (Harris, J.); Shick v. SEPTA, 1 PICO 299 1977 (Guarino, J.) In Shick, plaintiff's decedent was murdered in the Broad Street concourse although it was in dispute at the time of the summary judgment motion whether or not the crime occurred in the "free area." Shick v. SEPTA, supra at 301, 303. While recognizing that the municipality is not generally liable for injuries to the general public from street crimes due to inadequate police protection, Judge Guarino held that the decedent, as a business invitee, was in a special relationship to the host city so that the City owed decedent a duty of due care: Id. at 304. The court looked to Honaman v. Philadelphia, supra and of the Restatement, 2d, Torts, §344, discussed above, to define the City's duty: Id. at 315. The court held that the City is liable for failure to "anticipate, discover, warn or protect against the 'negligent' or intentional harmful acts of third parties." Id. at 305. The Shick trial was just decided before Judge Kremer.

In Fedulla, plaintiff was attacked while waiting for a subway train after having paid her fare. Denying the City's demurrer, Judge Harris held that plaintiff was not an ordinary member of the public walking down the streets of Philadelphia, but was a business invitee of both SEPTA and the City: Fedulla v. SEPTA, supra at 231. Citing Shick, the court found that this created the requisite special relationship between the victim and the City so that Restatement, 2d, Torts, §344, applied: Id. at 231-32.

Lastly, in the Political Subdivision Torts Claims Act, supra, the legislature recognized that liability should be imposed where the municipality controls

and possesses real property or in dangerous conditions in the municipality's utility systems.

## ORDER

And now, February 5, 1982, the motion of the City of Philadelphia for judgment on the pleadings is denied.