## Walsh v. Murphy

*Gerald L. Bowen,* for plaintiff.
*Richard S. March,* for defendant.

KELTON, *J.,* July 1, 1982 — This is a suit against a tavern owner (Daniel B. Murphy and Mary Ann Golden t/a L'il Caesar's Bar), hereinafter defendant, by a patron who was stabbed in defendant's parking lot by another patron. Plaintiff's claim of liability was based on the common-law duty of an innkeeper or tavern owner to protect his guests from harm and also on section 493 of the Liquor Code.* That section forbids a licensee to permit liquor to be sold to a visibly intoxicated person. The jury found that defendant's causal negligence was 60 percent, that plaintiff's causal negligence was 40 percent and that plaintiff's total damages were $250,000. After reduction for plaintiff's negligence and addition of Pa.R.C.P. 238 delay damages, the verdict was molded to $164,725. Defendant filed post-trial motions for a new trial and judgment n.o.v. contending that:

(1) the verdict was against the weight of the evidence;

(2) the court erred in not granting a motion for nonsuit at the end of plaintiff's case; and

(3) the court erred in not granting defendant's motion for a directed verdict.

We deny both motions.

Interpreting the evidence in a light most favorable to plaintiff, it appears that on November 3, 1979, plaintiff Edmund Walsh and two of his friends went to Lil Caesar's Bar in Morrisville, Pa., where they stayed for about two and one-half hours. When the bar closed at 2:00 a.m., plaintiff and one of his friends waited in plaintiff's car in defendant's

---

* Act of April 12, 1951, P.L. 9 (47 P.S. §4-493(1)).

parking lot to see if the second friend would need a ride home or whether he would leave with the bar maid with whom he was attempting to make a date.

While waiting in the car, plaintiff observed an intoxicated patron of the bar, one George Skerzynski, attempting to start his motorcycle. Skerzynski, who had an assortment of tools strewn about the ground around his motorcycle, was having some difficulty doing so. Once he completely missed the kick starter and fell down on the sidewalk in such a manner that his face hit the pavement. Amused at this sight, plaintiff and his friend in the car chuckled "because we thought he was boring drunk" but when they realized he might be hurt, they asked him if he needed any help.

Skerzynski then approached plaintiff's automobile wielding a wrench. Both plaintiff and his friend got out of the car, Skerzynski then began swinging the wrench directly at plaintiff. He missed plaintiff because Walsh leaned backwards and covered his face, thereby avoiding contact. Plaintiff then grabbed Skerzynski's shoulder, hit him twice and backed him up against the building wall. At this point, Skerzynski yelled "please don't hurt me" while crying and mumbling. Plaintiff released Skerzynski, told him to go home and proceeded to walk away. After plaintiff had taken a few steps, Skerzynski came charging at him with a knife and stabbed plaintiff repeatedly until plaintiff grabbed the blade of the knife and pushed Skerzynski up against the wall of the bar. Plaintiff realized that he was bleeding profusely and left the scene to go to the hospital with severe permanent injuries.

At trial, plaintiff advanced two theories of liability. He alleged that the tavern was negligent in failing as a property owner to exercise reasonable care to

protect plaintiff as a business visitor from assault and battery. He also asserted that defendant bar violated the Liquor Code by serving beer to a visibly intoxicated patron who later criminally assaulted plaintiff.

Defendant first challenges the sufficiency of the evidence under either of plaintiff's theories of liability. Secondly, the two insurers who represented defendant at trial maintain that defendants were entitled to individual findings separating dramshop liability from the common-law duty of a tavern owner to protect his patrons. For the reasons which follow, we hold that there was sufficient evidence to submit both theories of liability to the jury and further hold that defendant's insurance companies waived any right to special findings.

Defendant in its motion for new trial contends that the trial judge erred when he denied defendant's motion for compulsory nonsuit at the close of plaintiff's case. Following denial of the motion, defendant rested without offering evidence. With respect to the motion for compulsory nonsuit:

"[A] nonsuit may be entered only in a clear case where the facts and circumstances lead unerringly to but one conclusion. Paul v. Hess Bros., 226 Pa. Super. 92, 94-95, 312 A.2d 65, 66 (1973). In a trespass case, a plaintiff need not exclude every other reasonable possibility that could have caused the accident. It is not necessary, under Pennsylvania law, that every fact or circumstances point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability. Jones v. Treegoob, 433 Pa. 225, 230, 249 A.2d 352, 355 (1969)." Cornell Drilling Co. v. Ford Motor Co., 241 Pa. Super. 129, 135, 359 A.2d 822, 825 (1976).

## LANDOWNER LIABILITY

Applying these principles, we must examine the proof presented by plaintiff as to each of the two theories of liability. In order to be entitled to have their negligence claim go to the jury, plaintiffs were only required to make out a prima facie case that the tavern had a duty to protect its patrons, that that duty was breached, that the tavern's negligence was causally related to plaintiff's injuries, and that plaintiff sustained damages as a result of those injuries. See Corcoran v. McNeal, 400 Pa. 14, 161 A.2d 367 (1960).

After a study of the record, we are convinced that Walsh did establish sufficient facts from which a jury reasonably could have inferred negligence on the part of Lil Caesar's Bar. It is a well-established rule of law that the liability of a possessor of land who holds that land open to patrons for business purposes, has a duty to prevent tortious acts of third parties to his patrons or to warn them of such possible danger. Murphy v. Penn Fruit Co., 274 Pa. Super. 427, 418 A.2d 480 (1980) (stabbing in grocery store parking lot).

Such a duty has been recognized in Pennsylvania for owners of public theaters, Moran v. Valley Forge Drive-in Theater, Inc., 431 Pa. 432, 246 A.2d 875 (1968) (firecracker explosion in restroom of drive-in theater); for landlords, Morgan v. Buck Associates, 428 A. Supp. 546 (1977) (assault in mall parking lot); Feld v. Merriam and Wynne, Inc., 4 Phila. Co. Rpts. 511, appeal docketed, nos. 2090, 2303 (Pa. Superior Ct., Philadelphia, argued June 2, 1982) (robbery of husband and rape of wife in apartment-complex parking lot); and for common carriers, Kenny v. SEPTA, 581 F.2d 352 (3d Cir. 1978) (assault on train platform) and Carswell v. SEPTA, 259

Pa. Super. 167, 393 A.2d 770 (1978) (stone throwing in station). Most recently, we held that it is a jury question whether the conduct of residential homeowners violated a duty of care which they had to protect others from questionable conduct of third persons. See Smith v. Warrell, 35 Bucks Co. L. Rep. 357 and cases cited therein.

Section 344 of the Restatement (Second) of Torts states:

"A possessor of land who holds it open to the public, for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent or intentionally harmful acts of third persons . . . and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adquate to enable the visitors to avoid the harm, or otherwise protect them against it."

The court charged the jury according to comment f of section 344, which applies particularly to this case, and states as follows:

"Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of the third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or *character of his business,* or his past experience, is such that he should reasonably anticipate a careless or criminal conduct on the part of third persons, either generally or at some particular time, he

may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection." (Emphasis added.)

A tavern owner, like all landowners, has been held to the common-law duty outlined in the Restatement.

"Where one enters a saloon or tavern, opened for the entertainment of the public, the proprietor is bound to see that he is properly protected from the assaults or insults, as well of those who are in his employ, as of the druken and vicious men whom he may choose to harbor." Rommell v. Schambacher, 120 Pa. 579, 11 Atl. 779 (1887). See Corcoran v. McNeal, supra (assault in tavern); 70 A. L. R. 2d 628 (1960, Supp. 1981).

Lil Caesar's Bar is a go-go bar where on the night of plaintiff's stabbing, patrons were engaged in activities not commonly found at a tea party. One female had disrobed at the bar; another patron had vomited at the bar and Skerzynski was sitting in a slouched position atop of the juke box. Clearly defendant was conducting the *type* of business where a jury could find that defendant should have foreseen that injury could occur to one or more of the patrons and that the owner through his agent, the barmaid, should have exercised reasonable care to protect patrons such as plaintiff. Bernardo v. Knett, 28 Cambria 199 (1969) (boisterous horseplay at tavern; nonsuit refused).

Defendant argues that the stabbing of plaintiff was not foreseeable because there is no evidence that Skerzynski was a patron with dangerous propensities. We disagree. The barmaid, Debbie Miller Church, testified that she knew Skerzynski carried a knife. In fact, Skerzynski was romantically interested in the barmaid and made it a practice to leave

her excessively large tips, which she had attempted to give back.

Several weeks before the stabbing incident, when an off-duty police officer, Thomas Hebron, was in the bar, the barmaid indicated that she was fearful that Skerzynski's large tips were given with the expectation of future favors from her. During this conversation, Skerzynski came up to the two of them and said he wanted to talk to Debbie. Debbie did not want to speak to him so Officer Hebron said for Skerzynski to "leave her alone" at which time Skerzynski proceeded to pat his breast pocket and announced he had a knife. Debbie said she saw the knife and that she knew Skerzynski carried the knife with him for protection.

On the night of the incident, one of plaintiff's friends was trying to get a date with the same barmaid. It was this friend that plaintiff was waiting for out in the bar parking lot when plaintiff was assaulted. The barmaid, inside with plaintiff's friend, knew that Skerzynski carried a knife, knew that he was intolerant of other persons who communicated with her and also knew the tavern had served Skerzynski at least three beers and [that he] had been sitting slouched over the top of the juke box. The failure of the barmaid to at least warn plaintiff and his friends created a jury question as to defendant's negligence. Prather v. H-K Corp., 282 Pa. Super. 556, 423 A.2d 385 (1980) (known trouble maker on premises); Corcoran v. McNeal, supra; Gombar v. Schaeffer, 202 Pa. Super. 282, 195 A.2d 527 (1963).

Furthermore, the barmaid testified that as she exited the bar at closing with plaintiff's friend, she heard a "scuffle." She did not stop because she didn't like to get involved in scuffles, was getting off work and did not want to stay any longer. Under the doctrine of respondeat superior, the bar owner is re-

sponsible for the action or inaction of its agent, in this case the barmaid Debbie Miller Church, who had knowledge of Skerzynski's dangerous propensities. Prather, Corcoran and Gombar, supra.

Under these circumstances we find there was sufficient evidence to submit the case to the jury and to refuse defendant's motion for binding instructions.

## DRAMSHOP LIABILITY

Under section 4-493 (1) of the Liquor Code, the so-called Dramshop Act, it is unlawful for a tavern owner or his agent to "sell, furnish, or give" intoxicating beverages to a "visibly intoxicated" person. The Supreme Court has held that violation of the Dramshop Act is negligence per se and if the violation is causally related to plaintiff's injury, defendant is liable. Majors v. Brodhead Hotel, 416 Pa. 264, 205 A.2d 872 (1965); Smith v. Clark, 411 Pa. 142, 190 A.2d 441 (1963). See Corcoran v. McNeal, supra.

In two recent cases, the Superior Court has held that plaintiff could establish through circumstantial evidence that his assailant was served while visibly intoxicated. Couts v. Ghion, 281 Pa. Super. 14, 421 A.2d 1184 (1980) (petition for allowance of appeal denied, 1980); Speicher v. Reda, 290 Pa. Super. 168, 434 A.2d 183 (1981) (nonsuit reversed).

In Couts the evidence showed that at the scene of the accident the defendant had been staggering, smelled of alcohol and had slurred speech. Earlier he had consumed eight cocktails at defendant's lounge with the last drink taken about 45 minutes to an hour before the accident. A breathalyzer test taken two and one-half hours after the accident revealed a .12 percent blood-alcohol level. The court in Couts held that the circumstantial evidence of

events at the accident scene was relevant in determining whether or not the patron was visibly intoxicated when he was last served at the defendant's bar. Accordingly, the nonsuit which had been granted in favor of the tavern owner was removed.

In Speicher, evidence was presented that at the scene of the automobile accident, the driver was belligerent and was later unable to recall his actions at the scene. He pleaded guilty to driving while under the influence of alcohol and it was further disclosed that before the accident defendant was last at a tavern. Plaintiff did not present any direct testimony regarding the driver's condition or demeanor when present in the tavern, but rather relied on circumstantial evidence of the assailant's condition at the scene of injury. The court followed Couts and reversed the lower court's nonsuit in favor of the tavern owner.

Relying on Speicher and Couts, we were compelled to conclude there was a jury issue against the tavern where the perpetrator, Skerzynski, was observed at the scene of the incident to have been visibly intoxicated and it was shown that he had just been drinking at defendant's establishment.

At trial, three witnesses testified that Skerzynski was observed at the scene of the incident to have been visibly intoxicated and it was shown that he had just been drinking at defendant's establishment.

Plaintiff's friend Julius Franks saw Skerzynski in Lil Caesar's Bar before closing slouched over a juke box with a beer bottle in his hand. He testified that he also later observed Skerzynski outside the bar and described him as crying, mumbling, incoherent and "swaying back and forth." He further testified that Skerzynski smelled of alcohol and that in his

opinion, based on what he had observed, Skerzynski was visibly intoxicated.

Plaintiff's other friend Robert McCrindle who was with him outside the bar at the time of the stabbing, likewise testified that he had believed Skerzynski was drunk at the time of the incident. Skerzynski, once he left the bar, upon trying to start his motorcycle, toppled to the ground with the motorcycle and landed on his face outside of the bar. Plaintiff's testimony corroborated the observations of his two friends.

Debbie Miller Church, the barmaid, testified that she served Skerzynski three bottles of beer before he left her service area and went to the other end of the bar. Skerzynski stated that in addition to the beer he had at defendant's bar he had also consumed three bottles of beer earlier that evening in New Jersey. He could not remember stabbing plaintiff and admitted he fell down off his motorcycle a second time on the way home from the bar.

Despite this direct and circumstantial evidence, defendant contends that there was insufficient evidence to go to the jury regarding the issue of Skerzynski's visible intoxication. In addition to Couts and Speicher, we rely on Morehead v. Rock Tavern, Inc., 89 Ill. App. 2d 111, 231 N. E. 2d 259 (1967), where, in a similar factual situation, the circumstantial evidence of visible intoxication was held to be sufficient by the court. The sum of the evidence of visible intoxication was that assailant, who shot decedent in defendant-tavern's parking lot, was droopy, pretty high and he wasn't really steady. In Morehead, the court concluded, ". . . [A]ny reasonable person must admit that terms such as those used by the witnesses here are frequently used to allude to a state or degree of intoxication . . . it would therefore be up to the jury

to determine from the testimony whether Powell [the assailant] was intoxicated." Morehead, at 260-261.

In that case, defendant's witnesses testified that the assailant was sober, however, the court concluded that such conflicts are settled by the verdict. The barmaid's statement that she thought Skerzynski was sober when she served him and Skerzynski's answer that he was not intoxicated, must be resolved in the same manner.

We find that the jury could have reasonably concluded that Skerzynski was visibly intoxicated when he was served.

## SPECIAL INTERROGATORIES FOR THE JURY REGARDING PLAINTIFF'S TWO THEORIES OF LIABILITY

We have been advised that defendants have two insurance policies, one covering the potential dramshop liability and the other the common-law liability. The policies were not made a part of the record.

Special interrogatories were submitted to the court at the close of plaintiff's case whereby both of defendant's insurance counsel requested that the jury be directed to specify whether one of or both of plaintiffs' theories comprised the basis of their collective decision, should defendant be found liable. One insurance company requested that the special findings be part of the jury's main verdict deliberations and not submitted to the jury post verdict. The other insurance counsel requested that if not part of the main jury instructions, the special finding be submitted post verdict.

Pursuant to our authority to bifurcate issues, we denied that request but gave defense counsel leave to submit their proposed special interrogatories post

110

verdict in the event there was a verdict against defendant. See Pa.R.C.P. 213(b). One defense counsel stated that if the special findings were not made part of the main deliberation that he "would *not* ask that they [the jury] deliberate again." We therefore hold that defense counsel waived any right to raise the issue of special interrogatory request post trial. Tagnani v. Lew, 493 Pa. 371, 426 A.2d 595 (1981); Dilliplane v. Lehigh Transit, 457 Pa. 255, 322 A.2d 114 (1974).

Prior to charging the jury, it was represented by defense counsel to the court that the sole purpose of the special interrogatories was to enable defendant's two carriers to apportion liability among themselves. Plaintiff objected and because the jury was already going to receive a somewhat complex, six-question special verdict sheet, we saw no reason to complicate the deliberations further by adding three more questions as to issues not raised in the pleadings and of primary interest only to the insurance carriers. We therefore determined that the issue should be bifurcated under Pa.R.C.P. 213(b), but defendant did not pursue the matter after receiving but prior to recording the verdict.

Based on the foregoing reasons, we enter the following

ORDER

And now, this July 1, 1982, defendant's motion for new trial and motion for judgment n.o.v. are hereby denied and dismissed.