J-A18029-14

2014 PA Super 195

| SHARON AND JAMES YOUNG | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellants | |
| v. | |
| PRIZM ASSET MANAGEMENT COMPANY, STEAMTOWN MALL PARTNERS, LP AND THE MALL AT STEAMTOWN | |
| Appellee | No. 2078 MDA 2013 |

Appeal from the Order Entered on November 4, 2013
In the Court of Common Pleas of Lackawanna County
Civil Division at No.: 2010 Civil 8445

BEFORE:  LAZARUS, J., WECHT, J., and MUSMANNO, J.

OPINION BY WECHT, J.:                 **FILED SEPTEMBER 09, 2014**

Sharon and James Young[1] appeal the trial court's November 4, 2013 order granting summary judgment to Prizm Asset Management Company, Steamtown Mall Partners, L.P., and the Mall at Steamtown (collectively, "Steamtown Mall" or "the Mall") in this premises liability action.  We reverse.

The trial court has provided the following summary of the factual and procedural history of this case:

> On November 24, 2010, [Young] filed a complaint against [Steamtown Mall] resulting from an assault on Young in the parking garage of Steamtown Mall in February 2009.  Young, an employee of The Children's Place, a tenant of Steamtown Mall,

_____

[1]    Because our discussion focuses heavily upon events that directly involved only Sharon Young, hereinafter we use "Young" to refer to Sharon Young individually and the Youngs collectively.

was reporting to work at approximately 12:45 p.m. on February 6, 2009, when she was attacked by an unknown, unidentified assailant, who is alleged to have attempted to steal her car. The assault left Young with various injuries for which she alleges Steamtown Mall is liable.

After the completion of discovery, Steamtown Mall filed a Motion for Summary Judgment, alleging [that] it breached no duty to Young in failing to ensure her safety from an unanticipated criminal assault in an area open to the general public, and that no act or omission on behalf of Steamtown Mall was the cause of Young's injuries.

Trial Court Opinion ("T.C.O."), 11/4/2013, at 1-2.

On November 4, 2013, the trial court granted Steamtown Mall's motion for summary judgment. On November 14, 2013, Young filed a timely notice of appeal. The trial court did not order Young to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court did not file an opinion pursuant to Pa.R.A.P. 1925(a).[2]

Young presents the following issue for our review: "Whether the trial court erred in granting [Steamtown Mall's] motion for summary judgment." Brief for Young at 4.

Summary judgment motions are governed by Pa.R.C.P. 1035.2:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

_____

[2] Pursuant to Rule 1925(a), the trial court is not obligated to file an opinion when the reasons for the challenged order "appear of record." In this case, the trial court's November 4, 2013 opinion provides sufficient guidance regarding the trial court's reasoning to enable our review.

> (1)   whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2)   if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

Our standard of review of a trial court's order granting summary judgment is well-established:

> We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of the trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

**Abrams v. Pneumo Abex Corp.**, 981 A.2d 198, 203 (Pa. 2009) (citation omitted). "[A]n abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings." **Bouzos-Reilly v. Reilly**, 980 A.2d 643, 644 n.1 (Pa. Super. 2009).

Both the trial court and Steamtown Mall rely upon section 344 of the Restatement (Second) of Torts as controlling in this case. **See** T.C.O. at 2-3; Brief for Steamtown Mall at 6-20. Section 344 provides:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a)    discover that such acts are being done or are likely to be done, or
>
> (b)    give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts § 344. Although it appears that no Pennsylvania authority has held specifically that section 344 extends its business invitee protections to employees of a lessee of the party against whom liability is asserted, other courts long have applied section 344 in that situation. *See, e.g., Morgan v. Bucks Assocs.*, 428 F.Supp. 546, 549 (E.D.Pa. 1977) ("The plaintiff[,] who at the time of the assault was an employee of a store in the shopping center, was a business invitee [of the shopping center] for purposes of" section 344.).

The defendants in this case do not include Young's employer, but rather entities related to the Mall, where the employer leased its space. Hence, by the text of section 344, all defendants appeared to be "possessor[s] of land who hold[] it open to the public for entry for [their] business purposes," and Young qualified as a "member[] of the public [who was] upon the [defendant's] land for such a purpose." Inasmuch as a mall exists to profit from providing merchants with a location to conduct business, and merchants cannot reasonably conduct business without the

assistance of employees, we hold that Young was a business invitee for purposes of section 344. Consequently, the trial court correctly concluded that this case is governed by the provisions of section 344 and the case law interpreting that section.[3]

This conclusion, however, does not settle the matter, because Young's effort to establish disputes of material fact precluding summary judgment is as salient to section 344 as it is to any other. The issue we face is whether the trial court decided or assumed genuine disputes as to material facts that, if resolved in favor of Young, reasonably could support a jury verdict in her favor. Section 344 merely provides the framework within which we must

_____

[3]    Young asserts perfunctorily that Restatement (Second) of Torts § 448 controls, but does not provide any argument upon which we might prefer section 448 to section 344. Brief for Young at 19-20. Section 448 provides as follows:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

*Id.* § 448. Young's reliance upon section 448 is misplaced, as established by the cases she cites in support of her appeal, each of which explicitly hinged upon the application of section 344 and made no material mention of section 448. *See* Brief for Young at 20 (collecting cases). Moreover, Young provides no authority and makes no argument for the application of section 448 in lieu of section 344.

answer that question. For the reasons that follow, we find that the trial court's entry of summary judgment on the averments and evidence submitted necessarily depended upon the premature, if implicit, resolution of material factual issues that should have been submitted to a jury.

This Court has elaborated on the burdens imposed upon landowners by section 344 as follows:

> The Supreme Court has observed that an occupant of land for business purposes is not, of course, the insurer of the safety of his patrons. "It is merely necessary under [section 344] that reasonable measures be taken to control the conduct of third persons, or to give adequate warning to enable patrons to avoid possible harm." *Moran v. Valley Forge Drive-In Theatre, Inc.*, 246 A.2d 875, 879 (Pa. 1968). Thus, [section] 344 liability is only applicable where the occupant is negligent, *i.e.*, fails in one of two duties – either to take reasonable care to discover dangerous conduct of third persons is occurring or likely to occur, or to take reasonable care to provide appropriate precautions. *Carswell v. SEPTA*, 393 A.2d 770 (Pa. Super. 1978).

*Murphy v. Penn Fruit Co.*, 418 A.2d 480, 482-83 (Pa. Super. 1980) (citations modified).

Notably, when the question concerns whether prior criminal or violent incidents like the one alleged provided adequate notice to the responsible party of the risk in question, "the exact locale of prior crimes is immaterial insofar as [the landowner's section] 344 duties are concerned." *Id.* at 483. Thus, in *Moran*, we held as follows:

> Under [section 344], it is not necessary for defendants to be specifically aware of the exact location on their premises where patrons might be injured by the tortious acts of third persons. It is sufficient to establish a jury question of liability if the

- 6 -

evidence . . . shows that the defendants had notice, either actual or constructive, of prior acts committed by third persons within their premises [that] might cause injuries to patrons.

246 A.2d at 878-79. In **Murphy**, citing **Moran**, this Court observed that, "if the jury should find the occurrence of crimes anywhere on the store's property which might pose a danger to others, it could impose a duty upon [the owner] to take appropriate precautions throughout all of the premises." 418 A.2d at 483. We explained that the owner "may know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general [that] is likely to endanger the safety of a visitor." **Id.** at 484 (citing **Morgan**, *supra*; Restatement (Second) of Torts § 344 cmt. f[4]).

---

[4] Comment f to section 344 provides as follows:

*Duty to police premises*. Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

Against this legal backdrop we must assess the materiality of the disputed facts that we can discern under the particular circumstances of the case at bar as submitted by the parties in connection with Steamtown Mall's motion for summary judgment. The numerous deposition transcripts in the certified record reveal genuine issues of material fact concerning the extent, nature, locations, and contexts of the criminal activity observed at the Mall before Young was assaulted; the degree to which the garage in which the assault occurred was secured, monitored, and patrolled; and whether the criminal activity that occurred on and around the Mall in the years before Young was attacked provided notice to the mall of the prospect of a violent assault occurring in the garage in question.

In her deposition, Young attested that, as an employee of Children's Place, she was required to park in the upper levels of the garage in question, reserving the more convenient spots for customers of the Mall. Prior to her assault, Young had observed what she suspected were drug deals occurring in the parking garage. Young Deposition, 1/4/2012, at 56-57. Young also had been told by a co-worker that, some years before Young began her employment at Children's Place, a Children's Place employee had been beaten and carjacked in a parking lot adjacent to the Mall that the Mall had leased for employee use during the busy holiday season. *Id.* at 57-59. Young testified that the parking garage's lights where she parked were dim, and that only a few of the lights, perhaps three of five lights in that location, were lit. *Id.* at 49-51. Young further testified that, because lower levels of

the garage were under video surveillance, she assumed that there was camera surveillance of the entire garage, including the area in which she was assaulted. *Id.* at 73-74.

Aaron Whitney, who served as Director of Public Safety for Steamtown Mall at the time of Young's assault, testified in his deposition that there were no surveillance cameras monitoring the parking level where Young's assault occurred, Whitney Deposition, 3/12/2012, at 41, and indicated that he did not know why there were no cameras in that section of the garage. *Id.* at 46. He averred that employees at the Mall were neither informed nor warned of the lack of surveillance cameras in their designated parking levels. *Id.* at 58-59. Whitney further testified regarding various incidents that had occurred in the Mall's parking areas, including keyed cars, drug activity, detention of escaping shoplifters, and underage drinking. *Id.* at 47-49. Whitney also asserted that additional drug activity, fights, and assaults had occurred within the Mall but outside of the parking garage. *Id.* at 49-50.

At the time of Young's assault, Brian West was Steamtown Mall's Operations Assistant. West Deposition, 2/12/2013, at 9. West also testified that there were no surveillance cameras in the area of the Mall's parking garage where Young was assaulted, but that there were cameras on other levels of the same garage. *Id.* at 15. West testified that the parking garage gates on the relevant side of the Mall normally opened at 7:00 a.m., and that there were no guards posted at the gates overnight. *Id.* at 17. When asked to discuss potential entry points to the garage that would not require

a person to pass through the Mall, West identified an emergency stairwell leading to a public street adjacent to the Mall and a separate emergency stairwell leading to a service road at the rear of the Mall. *Id.* at 22. Each emergency stairwell had a "standard swinging gate" that was padlocked at midnight each night, but entirely open to entry from the street from approximately 7:00 a.m. to midnight. *Id.* at 22-23. There were no security cameras at either of these gates. *Id.* at 23-23. West acknowledged that people had accessed the foot entrance through the service road. *Id.* at 155. West testified that he did not know why the gates did not have a safety push bar on the inside, which would allow egress from the garage while preventing entry into the garage from the street. *Id.* at 25-26. West acknowledged that, if people could not enter the parking garages directly from the street, they would have no choice but to use the Mall's main entrance, which might enhance security. *Id.* at 44. West did not dispute the contents of incident reports showing that, from January 1, 2006 through May 31, 2008, Scranton police responded to approximately twenty-four assaults in various areas within and around the Steamtown Mall and in the Mall's parking area, and that, from January, 2, 2009, through May 28, 2010, Scranton police responded to 101 trespasses, ten assaults, and forty-six disorderly conducts. *Id.* at 32-33.

James Walsh, General Manager and Vice President of Prizm Asset Management, testified on March 12, 2012, that he did not know "the rationale" behind the lack of surveillance cameras in the upper-levels of the

tower parking garage. Walsh Deposition, 3/12/2012, at 13. He testified that Mall employees are required to park in the upper-levels of the tower parking garage in order to save lower-level parking for mall patrons. *Id.* at 19. Walsh further testified that, following the assault upon Young, Young's employer "expressed concern for the safety and well[-]being of [its] employees." *Id.* at 24. Thereafter, Walsh allowed employees of Children's Place to park in the lower level of the parking garage, which was under video surveillance. As well, Children's Place provided a security officer to escort employees to and from their cars. *Id.*

Notably, Walsh also testified that the drug activity at the Mall was sufficient to provoke the Scranton police to conduct unannounced "sting" operations within the Mall:

[WALSH:] Scranton Police will actually conduct stings at the Mall and they will make arrangements to do the stings there and they don't tell us. You know so you get a report in the paper it's like thanks guys[. T]hey'll conduct their sting there because it's the Mall[,] everybody knows the Mall[,] so they'll do their sting and do their buy meaning the undercover [c]op will do his buy and then it ends up in the paper.

[Q.] How long has that been happening?

[Walsh:] For a[ ]while. We've been trying to get it under wraps but the problem is the Mall is the Mall. You know you have the out[-]of[-]towners so they know where it's at. We finally caught on with like what's going on and they're like well it's the Mall, and we're like well it gives us a bad name when you're doing your stings in our hallways or our stairwells. The [c]ops pick the location and that's what we found out and they weren't letting us know and that gets into the paper when they bust them . . . .

*Id.* at 16. Walsh was not certain whether these sting operations had preceded the attack on Young. *Id.* at 16-17.

Robert Richmond, Loss Prevention Detective for Boscov's at Steamtown Mall at the time of Young's assault, testified that his job duties included apprehending shoplifters, maintaining physical security of the department store, and preventing loss. Richmond Deposition, 2/12/2013, at 7-8. Richmond testified that, during his time working for Boscov's, he had security concerns regarding people who parked in the parking garage in which Young was attacked. *Id.* at 9. Richmond testified that the "dirty and dingy" condition of the garage diminished the effectiveness of its lighting. *Id.* Richmond also testified that the Mall is located in a "rough area [in] downtown Scranton" based upon "the type of people" who frequent the Mall and the surrounding area. *Id.* at 13. Richmond further testified that he responded to approximately five fist fights in Boscov's while he was employed there. *Id.* at 14.

Lieutenant Leonard Namiotka of the Scranton Police Department testified by deposition on February 12, 2013. As Administrative Lieutenant, one of Lt. Namiotka's duties was to oversee the Scranton Police Department's records division. Namiotka Deposition, 2/12/2013, at 5-6. Lt. Namiotka provided the Youngs' attorney with two Incident Analysis Reports ("IAR"), which delineated every call received by the Scranton Police Department from the Steamtown Mall. The first IAR included all calls in the three years preceding Young's assault, and the second IAR included all calls

in the three years following Young's assault. *Id.* at 6-7. The IAR for the three-year period preceding Young's assault showed that Scranton police had received calls for thirty-three assaults, thirty-seven fights, 110 disorderly conducts, and 110 trespasses in and around the Mall. Namiotka also worked extra shifts as security at the Mall on Friday nights for at least three years. *Id.* at 10-11. Namiotka testified that "the Mall requested that the Police have a presence because of the volume of incidents that were occurring with retail theft, a lot of juveniles in the Mall." *Id.* at 12. The persistence of drug arrests, disorderly conducts, and defiant trespasses prompted the Mall to request a regular police presence. *Id.* at 12-13.

In its analysis of the testimonial evidence, the trial court focused principally upon the fact that none of the witnesses were aware of an assault as vicious as was inflicted on Young occurring in the Mall or its garages in the years before her attack. Rather, much of the crime reported was of a less serious nature – simple possession of controlled substances, keyed cars, shoplifters, the occasional fight. *See* T.C.O. at 5-7. Reviewing Young's theories of the case – that there should have been security cameras on the level of the garage where she was attacked, that the light was unsafely dim – the trial court indicated that it could not "assume" that better lighting would have prevented this incident because "Young was able to see and

navigate her way through this area in spite of the lighting." *Id.* at 8.[5] Regarding the lack of surveillance, the trial court rejected the suggestion in one sentence: "Testimony revealed [that] this area of the parking garage was never equipped with cameras[] because there were no incidents, both in this area as well as [elsewhere] within the garage." *Id.* at 8.[6] The trial court also rejected Young's suggestions that the ease of access to the garage from outside the Mall presented an unnecessary risk of foreseeable harm: "Although . . . testimony revealed [that] there was an ability to secure the . . . stairwell, testimony failed to reveal a need for same. Nowhere in any of the transcripts submitted was there a notation of criminal activity linked to the stairwell, especially in the middle of the day when Young's incident occurred." *Id.* at 8-9. Ultimately, the court concluded that "[t]he record fails to reflect any prior notice to Steamtown Mall of the probability of a criminal assault occurring within the garage. Facts failed to reveal [that] Steamtown Mall or could reasonably anticipate an assault such as this."

We cannot accept the trial court's conclusion, which, when compared against the evidence and the governing legal standard, plainly embodies a

_____

[5] This unfortunate characterization implies that nothing short of impenetrable blackness may constitute a hazard of inviting and enabling criminal activity.

[6] Testimony also revealed that other areas of the garage were under video surveillance.

degree of evidence-weighing and fact-finding in which a trial court may not indulge in the context of a motion for summary judgment. As noted, *supra*, section 344 does not require for the establishment of liability that closely similar incidents of criminality have occurred at or very near the location at which the later crime occurred. The voluminous testimonial evidence and the Scranton Police Department's IARs reveal that the Steamtown Mall, presumably like most malls, was no stranger to misbehavior and criminality. Moreover, the criminality was not wholly limited to petty matters such as shoplifting and trespass: Were that the case, the Scranton Police Department presumably would have dedicated resources elsewhere rather than go to the trouble of conducting unannounced undercover operations to interdict drug activity. As well, the evidence indicated without material contradiction that a Children's Place employee had been viciously assaulted, much like Young, on an adjacent parking lot used by the Mall for employee parking during the busy holiday season. That this occurred outside the legal perimeter of the Mall, as such, does not justify rejecting Young's claims as a matter of law.

Under Restatement section 344, a property owner that holds its property open to the public for business purposes may be held liable for harm suffered by business invitees when the owner fails to discover that such acts are being done or are likely to be done, or fails to give adequate warning to enable invitees to avoid or protect themselves against the harm. *See Murphy*, 418 A.2d at 482-83. Notably, in *Murphy* we emphasized that

- 15 -

the exact location of the crimes submitted as having provided notice to the owner of a given risk is not critical; a jury question is presented when "the defendants had notice, either actual or constructive, of prior acts committed by third persons within their premises [that] might cause injuries to patrons." *Moran*, 246 A.2d at 878-79. Thus, when a jury finds that crimes posing a danger to others occurred anywhere on the defendant's property, the jury may "impose a duty upon [the defendant] to take appropriate precautions throughout all of the premises." *Murphy*, 418 A.2d at 483; *see* Restatement (Second) of Torts § 344 cmt. f ("If [an owner's] past experience[] is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.").

The evidence set forth above, viewed in the light most favorable to Young and granting Young every reasonable inference deducible therefrom, created genuine issues of material fact that, if resolved by a jury in Young's favor, would warrant relief. Applying the governing standard, we find that Young is not barred from recovery as a matter of law based upon the submissions of the parties to date. Consequently, we reverse the trial court's entry of summary judgment against Young and remand for further proceedings.

Judgment reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/9/2014</u>